GAINESVILLE, HENRIETTA & WESTERN RAILWAY COMPANY ET AL.

v. MOLLIE M. LACY.

No. 65.

## 1. Record in Supreme Court.

This court will look to the uncontroverted facts in the record for a full understanding of the questions to be decided when the Court of Civil Appeals omits findings upon material points ........................ 246

## 2. Bodily Presence of Injured Before the Jury—Age.

In suit for damages for personal injuries to a wife, verdict was rendered for $5000. The trial judge had instructed the jury "that it could take into consideration the diminished working capacity of the plaintiff." On appeal, this charge was attacked on alleged grounds "that there was no proof showing either the age of the plaintiff, the probable duration of her life, or the value of her labor either before or after the injury." There were circumstances in evidence from which opinions could be formed. *Held*, in such case, in which age is but a help to arrive at the conclusion sought, the fact of the presence of the party before the jury is proper to be considered on appeal in determining the sufficiency of the evidence ..................................... 246

## 3. Case Adhered to.

Brunswig v. White, 70 Texas, 511, approved, and the rule announced applied to jury estimating value of services of a wife from circumstantial testimony ................................................ 247

## 4. Value of Services of a Wife.

From a detailed statement of the position of the wife, her family, her ordinary duties and labor, a jury can estimate the value of such services as well as any witness likely to be called. It is not necessary that witnesses should give money estimate of such value............. 248

## 5. Wife's Services.

The wife's services are not to be computed as of a servant or hireling; and a verdict based upon the circumstances and condition of the wife, and guided by the sound judgment and discretion of the jury, should not be disregarded, unless upon evidence of abuse of such discretion. 249

ERROR to Court of Civil Appeals for Second District, in an appeal from Clay County.

The opinion gives a history of the litigation and a statement of the matters in contention.

*Swan & Swain*, for plaintiffs in error.—As to the correctness or otherwise of the charge complained of in this case, we submit that there is a rule, to which there is no exception, that whatever fact can be proven by a witness in the ordinary course of business, must be proven in order to justify a verdict thereon; that is, whatever is susceptible of proof by the mouth of witnesses must be proven in order to sustain a verdict. There are certain elements of damage, such as physical pain and suffering, mental anguish, grief, and the like, that can not be measured by any kind of

pecuniary standard, and as to such elements of damage the amount to be recovered rests largely in the discretion of the jury, and subject only to revision by the court when manifestly excessive; and in such cases proof, being impracticable, is not required; but where the loss or injury sustained is of such a character as to be susceptible of proof with a reasonable degree of certainty as to value, the value must be proven in order to sustain a verdict.

If the foregoing propositions are true, then the only question for this court to determine is, whether the value of time and labor is such an element of damage as is susceptible of proof; and we submit that with the sense in which " working capacity " is used in the court's charge ·in this case there is hardly room for argument against the proposition that such proof could be made.

*James T. Carter*, for defendant in error.

BROWN, Associate Justice.—Eddy and Cross were the receivers of the Gainesville, Henrietta & Western Railway Company, operating the same under appointment by the United States Circuit Court. On the 15th day of June, 1890, Mollie M. Lacy was a passenger on a passenger train of the said receivers, and there was a collision between the passenger train and a special train at Nocona, in which Mollie M. Lacy claims to have received personal injuries. John B. Lacy, the husband of Mollie M. Lacy, filed suit in the District Court of Clay County against the receivers and the railway company for the recovery of damages occasioned by such injuries. John B. Lacy died during the pendency of the suit, which thereafter was prosecuted in the name of Mollie M. Lacy.

Judgment was by the District Court rendered for plaintiff against all the defendants, from which they appealed to the Supreme Court. The case was transferred to the Court of Civil Appeals, which affirmed the judgment of the lower court as to the receivers, and reversed and dismissed it as to the railway company.

The receivers filed a motion for a rehearing in the Court of Civil Appeals, setting up, among other grounds, that the Court of Civil Appeals erred in failing to sustain their fifth assignment of error, which is as follows: "The court erred in the eighth paragraph of its charge, by instructing the jury that it could take into consideration the diminished working capacity of the plaintiff, for the reason that there is no proof showing either the age of the plaintiff, the probable duration of life, or the value of her labor either before or after the injury, and it is therefore unauthorized."

This assignment presents three grounds of objection to the charge: first, that the evidence does not show the age of plaintiff; second, that

the probable duration of her life was not proved; third, that the value of her labor before and after the injury was not proved.

On the motion for rehearing the Court of Civil Appeals filed the following findings of fact: "There was evidence showing that the injured person was the mother of young children; that she was stout, robust, and in good health, able to perform effective labor in the discharge of her household duties before the injuries; that thereafter she was unable to labor; that she was in feeble health, and was very seriously and permanently injured."

This court will look to the uncontroverted testimony, as shown in the record, for a full understanding of the question to be decided, the Court of Civil Appeals having omitted to present in its finding some of the facts that so appear.

Dr. E. A. Johnson, testifying of Mrs. Lacy's injuries and condition, said: "I think her injuries will shorten her life; but she may live twenty-five years or more yet."

Walter Lacy testified, that he was the son of plaintiff, and that he was 14 years old. He was her oldest child.

John B. Lacy, her husband, testified, by deposition taken in 1890, that he was the husband of Mollie M. Lacy, and that they had been married about sixteen years; he was 46 years old when he testified.

Mrs. Lacy testified in person before the jury, and was subject to their observation. The defendants cross-examined her, but asked her no question as to her age, nor did they offer any testimony upon the question. We do not mean to assert that a jury may act upon what they observe during a trial, as a general rule; but upon a question like this, in which age is but a help to arrive at the conclusion sought, we think her presence is proper to be considered by this court in determining the sufficiency of the evidence. The evidence was sufficient to enable the jury to approximate the age of the plaintiff with reasonable certainty.

It was not necessary to give evidence of the probable duration of life; such evidence is admissible, but without it the jury can determine the matter from their knowledge of such things, and from the proof as to the health of the party and other facts before them. Railway v. Compton, 75 Texas, 672; Railway v. Lehmberg, 75 Texas, 61.

Upon the third and last proposition, we must again refer to the undisputed facts shown in the record, which show that Mrs. Lacy was when injured the wife of J. B. Lacy, and the mother of three children, the oldest being fourteen years old and the youngest called by her a "baby." That she and her husband kept house, and she performed the duties of housewife, doing the cooking, washing, and ironing, and taking care of the children; in fact, discharged all the duties of housekeeping. She was healthy and robust, not having been sick for more than two years, as she

says, having had no physician to see her for that time. Since the injury she has been in bad health and unable to perform the same duties.

Brunswig v. White, 70 Texas, 511, is a case in which a child of tender years had been killed, and the objection was made that the value of its services which might have been rendered before reaching majority had not been proved. Justice A. S. Walker, in a well considered opinion, reviewing the Texas cases, as well as a number of those of other States, said: " When from the age and undeveloped state of the child any estimate of the value of the services until majority would be a matter of opinion, in which no particular knowledge or expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value, then upon such testimony the sound discretion of the jury can be relied on to determine the value without any witness naming a sum." The opinion reviews the following cases, which fully sustain the opinion: Railway v. Nixon, 52 Texas, 24; Railway v. Cowser, 57 Texas, 304; Railway v. Kindred, 57 Texas, 491; Potter v. Railway, 21 Wis., 374; Chicago v. Major, 18 Ill., 359; Chicago v. Hesig, 83 Ill., 207; Railway v. Becker, 84 Ill., 486.

With reference to the right of a man to recover for the loss of time from the effects of injuries received through the negligence of another, it is said: "And if he uses his time for any valuable purpose, though he does not actually earn money by it, he should be allowed the reasonable value thereof." Shearm. & Redf. on Neg., sec. 761. Mr. Sedgwick, in his work on the Measure of Damages, section 255, says: "The value of time and services, where there is no current rate applicable to the case, must be fixed by the jury; and the past earnings of the party may be shown, not as fixing the value in themselves, but as evidence to assist the jury in fixing them."

Stoher v. Railway, 91 Missouri, 51, was a suit by children for the death of the father, and the question of the value of his services and aid to them was in issue. The court said: " In such cases juries are not confined to any exact mathematical calculation, but are vested with considerable discretion, which the courts will not interfere with unless it has been abused."

In Fisher v. Jansen, 128 Illinois, the question was as to the right of the jury to assess the damages on account of diminished capacity to labor, without evidence as to the value of such labor performed before and after the injury. The court held, that in such cases it was not necessary to have the testimony of witnesses as to the value of such services, because they were as well known to the jury as to any witness that might be called.

In Furnish v. Railway, 102 Missouri, 669, the husband sued to recover for the loss of the society of his wife, caused by the injuries received through the negligence of defendant, and the objection was made that

there was no proof of the value of her society. In passing upon the objection, the court said: "To this it may be said, that the nature of the subject does not admit of direct proof of value, and when the fact of loss of society is established by testimony, the assessment of reasonable compensation must necessarily be committed to the sound discretion and judgment of the triers of fact."

The Supreme Court of Canada, in the case of Railway v. Lett, had under consideration a case very much like this. The court stated the evidence as to damages to be: "The husband was married on the 21st of October, 1849; his wife was in her fifty-third year when she was killed; he was nine years her senior, and she was in the very best of health; they had nine children, seven of whom were living [stating ages]. The five younger children, to whom the jury awarded damages, lived at home, and were not providing for themselves. The wife and mother managed the whole business of the house, made all purchases and repairs, and did everything about the house. The husband had nothing to do while she lived except to attend to the business of his office. She did a great deal of the housework, though they always kept one servant; she almost always milked the cow, in preference to allowing the servant to milk her, who did not understand her." Again, the court said: "Certainly the service of a wife is pecuniarily more valuable than that of a mere hireling. The frugality, industry, watchfulness, attention, and tender solicitude of a wife and the mother of children surely make her services greater than those of an ordinary servant, and therefore worth more." 26 Am. and Eng. Ry. Cases, 454.

In 3 Sutherland on Damages, 724, speaking on the subject of the right of the husband to recover for injuries to the wife, that author said: "The wrong may entitle the husband to substantial compensation, though the parties were in such circumstances that the wife is not accustomed nor desired to do physical labor."

We close these citations with a quotation from Mr. Cooley's work on Torts: "The word service has come to us in this connection from the times in which the action originated, and it implies whatever of aid, assistance, comfort, and society the wife would be expected to render to or bestow upon her husband under the circumstances and in the condition in which they may be placed, whatever those may be."

The term service, as used at common law in relation to the labor performed and aid rendered by a wife, does not properly represent the dignity of the wife's work as a member of the matrimonial partnership in Texas. She no more owes service to the husband than he to her. Her duties are those of a wife, and are not to be valued as that of a servant or hireling. The fruits of her labor belong to the community, as does that of the husband, and the same rules that apply to the one, under like

circumstances apply to the other.    The husband usually follows a pursuit which makes a return in money, and the value of his labor can be ascertained by a comparison with that of other men in like employment with like ability.    The wife's labor, while equally valuable to the community, does not command a price in the market, and therefore can not be proved by experts as can that of the husband.    If she were to engage in work for hire, or in an independent business for gain, the same rule would apply as to a man.

In the case of Chicago v. Major, 18 Illinois, 359, the court enunciated this rule:    "It is only where witnesses are supposed to possess a skill and judgment superior to the generality of mankind upon a particular subject that their opinions are allowed to go the jury for the purpose of supplying the supposed want of experience and judgment of the jury.    Where such aids are not attainable, or are not produced, then the jury must be guided by their own best judgment applied to the facts in proof, for the purpose of arriving at a conclusion."    The foregoing extract was quoted with approval by this court in Brunswig v. White, supra.

Suppose that in this case a witness had been called to testify as to the value of Mrs. Lacy's labor and aid as a wife.    He must simply have given his opinion, formed from knowledge that is common to all men.    It would have been one man telling twelve what his opinion was in a given state of facts in evidence before the court, and upon which they were equally as well, if not better, qualified than he to form a judgment.    Such testimony is admissible for either plaintiff or the defendant in any case; but if not given, the jury may upon a proper state of facts proceed to estimate the damages according to their best judgment.    It is to be understood always that the amount assessed must be only the pecuniary loss occasioned by the diminished capacity of the wife, and that the discretion, though confided to the jury, is not one that can not be controlled in case it should be abused.

The evidence in this case was sufficient to authorize the court to submit the matter of damages occasioned by lessened capacity of plaintiff to discharge her duties.

There is no error in the judgment of the Court of Civil Appeals, and it is affirmed.

Delivered December 14, 1893.