TEXAS MIDLAND R. R. v. WIGGINS.

(Court of Civil Appeals of Texas. Dallas. Nov. 29, 1913. Rehearing Denied Dec. 13, 1913.)

1. APPEAL AND ERROR (§ 1001*)—REVIEW—VERDICTS.

Where there is any evidence sustaining a verdict, it will not be disturbed on appeal; and hence the only matter for the appellate court to consider upon an assignment challenging the sufficiency of the evidence is whether there was enough evidence to go to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

2. RAILROADS (§ 327*)—CROSSING ACCIDENT—LOOK AND LISTEN.

Persons about to cross a railroad track must look and listen for approaching trains, and a failure to do so bars recovery.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

3. RAILROADS (§ 350*)—CROSSING ACCIDENT—JURY QUESTION.

In an action by one run down by a train, the question whether he looked and listened is

one for the jury whenever the evidence is conflicting.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

**4. APPEAL AND ERROR (§ 1003*)—REVIEW—VERDICTS.**

A verdict may be overruled on appeal, when it is so against the preponderance of the evidence as to be manifestly wrong.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

**5. RAILROADS (§ 307*)—CROSSING ACCIDENTS—FLAGMAN.**

When an ordinarily prudent person would have maintained a flagman or watchman at the railroad crossing where an injury occurred, a failure on the part of the railroad company to keep such flagman or watchman was negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 972–977, 979, 980; Dec. Dig. § 307.*]

**6. RAILROADS (§ 350*)—CROSSING ACCIDENTS—FLAGMAN.**

In an action by one run down by a railroad train, the question of the railroad company's negligence in failing to keep a watchman at the crossing *held* for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

**7. EVIDENCE (§ 117*)—ADMISSIBILITY—POSSESSION OF LIQUOR—PROOF OF INTOXICATION.**

In an action by one run down by a train, evidence by a witness, several blocks away from the accident, that when he reached the place of the accident he found a pint whisky bottle, one-third full, in the débris of plaintiff's wagon, is not competent, standing alone, to show intoxication.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 136; Dec. Dig. § 117.*]

**8. TRIAL (§ 106*)—ARGUMENT OF COUNSEL—DISCRETION OF COURT.**

The scope of the argument of counsel rests largely in the discretion of the trial court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 267; Dec. Dig. § 106.*]

**9. APPEAL AND ERROR (§ 1060*)—REVIEW—HARMLESS ERROR—NECESSITY OF SHOWING PREJUDICE.**

In an action by one run down at a railroad crossing, argument of counsel, based on the failure of defendant to prove plaintiff's intoxication after alleging it in its answer, and on the fact that one of defendant's witnesses testified in another case for defendant, will be considered harmless, when no showing of prejudice is made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

**10. TRIAL (§ 242*)—INSTRUCTIONS—CONFUSED INSTRUCTIONS.**

In an action by one run down on a railroad crossing where the court charged that if any of the things alleged to have caused the accident existed, and their existence was negligence and the proximate cause of the injury, the finding should be for plaintiff, a further charge that if plaintiff was guilty of contributory negligence which proximately caused or contributed to the accident, verdict should be for defendant, even though also guilty of negligence, was not improper or misleading in denying a verdict for defendant, even though it was not negligent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 569–576; Dec. Dig. § 242.*]

**11. DAMAGES (§ 208*)—ACTIONS—JURY QUESTION.**

In an action by one struck by a train, evidence *held* sufficient to authorize the submission to the jury of plaintiff's loss of future earning capacity.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220, 533, 534; Dec. Dig. § 208.*]

**12. DAMAGES (§ 208*)—PERSONAL INJURY—LOSS OF FUTURE EARNING CAPACITY.**

Where plaintiff, a negro, was only able to approximate his age at 50 years, the fact that his age was not absolutely established, nor his life expectancy proven, is no ground for refusal to submit to the jury the question of his loss of future earning capacity; it appearing that he was before the jury for inspection, and that testimony was offered as to his previous health and habits.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220, 533, 534; Dec. Dig. § 208.*]

**13. DAMAGES (§ 132*) — PERSONAL INJURY — VERDICT.**

An award of $3,500 damages to a negro 50 years old, who was run down by defendant's train, is not excessive, where it appeared that before the accident he was perfectly sound and able to earn from $1.50 to $2 a day, but after the accident he was permanently disabled, and could do nothing but the very lightest labor, and constantly suffered pain.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by John Wiggins against the Texas Midland Railroad. From a judgment for plaintiff, defendant appeals. Affirmed.

Henry C. Coke and S. W. Marshall, both of Dallas, and Dashiell, Crumbaugh & Coon, of Terrell, for appellant. Ed. R. Bumpass, of Terrell, for appellee.

RASBURY, J. Appellee was struck and injured by one of appellant's locomotives attached to a passenger train at a point in Terrell, Tex., where the appellant's railroad crosses Moore avenue. Suit was instituted in the court below, the complaint alleging such injuries to be the result of the negligence of appellant in: (1) Failing to sound the whistle and ring the bell for the crossing; (2) moving the train at a high and dangerous rate of speed; (3) the presence of buildings and platforms upon appellant's right of way and the permitting of cars to stand upon its side track, thereby obstructing appellee's view of the approaching train, and preventing him from hearing signals; and, (4) failing to place a watchman at said crossing, which was alleged to be a dangerous and hazardous one. Appellant met the charges of negligence by the general denial, allegations of contributory negligence on the part of appellee in: (1) Not looking for the train, and in not listening for the signals; for that, had he done so, he could have seen the approaching train and heard the signals in time to have avoided the accident; (2) in that appellee had been imbibing intoxicants

the morning of the accident, and as a result was inattentive and drowsy, and failed to look for the train; (3) that the buildings complained of were not on appellant's right of way, and had not been erected by its permission, but were the property of others, and that the side tracks or switches adjacent to the buildings had been placed there to serve the owners in loading and unloading freight; and, (4) that after discovering appellee was about to cross its track ahead of its approaching train, appellant used every effort in its power to stop its train in time to avoid the accident, but was unable to do so. Upon trial by jury verdict for $3,500 was awarded appellee, followed by judgment in accordance therewith, from which this appeal is taken.

The evidence introduced upon trial of the case was conflicting, but in deference to the verdict of the jury it sustains the following conclusions of fact: Terrell has 7,000 or 8,000 inhabitants; Callie street runs north and south through the town, and appellant's line of railway is laid upon and in the center thereof; Moore avenue runs through Terrell east and west. The injuries were inflicted upon appellee at the point of intersection of said streets. Said Moore avenue is about one mile in length in the city, and is the important business street of Terrell. Practically all of its business houses, stores, and other institutions front said avenue, and surround as well the place of the accident. Over the avenue and across appellant's railway, not only all the east and west local traffic passes, but the east and west traffic from the surrounding country, as well as distant traffic, which is heavy, passes over said avenue and across appellant's railway. At the intersection described the four corners are occupied as follows: South of Moore avenue and west of Callie street is the Union Depot (used by appellant and the Texas & Pacific Railway Company, which runs parallel with and south of Moore avenue). South of Moore avenue and east of Callie street is the Starr-Mayfield building, used for wholesale purposes, and to reach which appellant has built a switch from a point north of Moore avenue, which extends south on Callie street across Moore avenue to said building. North of Moore avenue and east of Callie street is the city waterworks building, some sort of coalhouse, the calaboose, and other buildings built and maintained by the municipality. North of Moore avenue and west of Callie street and appellant's line of railroad is the Carter-Jandrews building. Since it is in and about this building that the accident occurred, we describe its situation and surroundings particularly. The structure fronts 85 feet on Moore avenue, and extends back on Callie street on a line with appellant's railroad 115 feet. It was not built by, and is not upon the appellant's right of way. On the east or Callie street side of the building the owners thereof have erected an elevated platform. North

of and beyond this platform at some point appellant built a switch branching from its main line, for the purpose of serving those who occupy said building in unloading freight. There is about 13 feet of space between the switch and the building. From the switch to the main line is 19 feet. This switch not only parallels the Carter-Jandrews building and the platform to the end thereof, but projects into the north side of Moore avenue. In the front of the building or on the Moore avenue side there is between the building and the curb a 12-foot sidewalk. The switch just mentioned projects past the sidewalk into Moore avenue from 3 to 6 feet. Said Moore avenue is about 76 feet wide between curbs. Deducting for the gutters at each curb, there is available for traffic about 68 feet. In addition to the two wholesale houses, the Union Station, and the city waterworks, there was in close proximity to said point the electric light plant, ice plant, compress and oil mill. From these institutions much noise and resultant confusion emanates. On the morning of the accident, or prior thereto, a freight or "box" car had been placed by appellant upon the switch that served the Carter-Jandrews building, which projected into and upon Moore avenue from 15 to 18 feet, or from 3 to 6 feet beyond the sidewalk in front of said building on Moore avenue. Appellee, who was the driver of a wagon belonging to a local merchant in Terrell, was directed by his employer to go to the Starr-Mayfield building herein described, for purposes unimportant to mention here. In doing so he entered Moore avenue west of Callie street, and while proceeding on his way, and just after passing the freight or "box" car, and as his horse was stepping upon appellant's railroad track, or was thereon, the horse and wagon were struck by an incoming passenger train, appellee thrown therefrom upon the ground, and seriously and permanently injured.

[1] The first and second assignments of error, in effect, challenge the sufficiency of the evidence to sustain the verdict and the judgment. It is vigorously maintained by the appellant that appellee could have seen the train in time to have avoided the accident (notwithstanding the presence of the car in the street), that the signals were given, and that the train was not moving at a dangerous rate of speed, and sets out at length the testimony of its witnesses sustaining such claim. Just as vigorously appellee urges and maintains the contrary theory, and substantiates his claim by quoting in like manner the testimony of his witnesses. As to whether appellee could have seen the train, or the signals were given, or the train was moving at a dangerous rate of speed are questions to be determined by the jury, and our sole function is to read the evidence and determine if it is sufficient to carry to the jury the determination of such issues as

questions of fact. G., H. & S. A. Ry. Co. v. Michalke, 90 Tex. 276, 38 S. W. 31; Receivers H. & T. C. Ry. Co. v. Stewart (Sup.) 17 S. W. 33; G., H. & S. A. Ry. Co. v. Harris et al., 22 Tex. Civ. App. 16, 53 S. W. 599. We have done so, and conclude there was no error in submitting such issues to the jury. In connection with the assignments under discussion the rule is firmly established in this state that where there is evidence in the record which sustains the verdict of the jury, it will not be disturbed by the appellate court. It is only where the verdict of the jury is manifestly against the evidence, or inadequate with or contrary thereto, that it becomes our duty to set it aside. We have not set out the testimony of both sides by way of comparison in order to sustain our conclusions, since there is no occasion to do so. Having reached the conclusion we have, and counsel being familiar with the rule in such cases, we anticipate such a course will not be expected of us.

[2, 3] It is, of course, the duty of persons about to cross a railroad track not to walk or drive carelessly into a place of possible danger, and to do so is not merely an imperfect performance of duty, but an entire failure of performance, which will bar the right to recover damages if such failure contributed proximately to an injury. But whether the complaining party did so contribute to his injury is, as we have said, always a question of fact for the jury to determine when the evidence on the point is conflicting. On the other hand, where the evidence of negligence on the part of the injured party is undisputed, it then becomes the duty of the trial court to instruct a verdict as illustrated by the following cases: Haass v. G., H. & S. A. Ry. Co., 24 Tex. Civ. App. 135, 57 S. W. 855; M., K. & T. Ry. Co. v. Martin, 44 S. W. 703; Bennett v. S. L. S. W. Ry. Co., 36 Tex. Civ. App. 459, 82 S. W. 333; G., C. & S. F. Ry. Co. v. Townsend, 82 S. W. 804. In consonance with what we have said the assignments are overruled.

[4] Under the third and fourth assignments of error appellant asserts that the verdict and judgment are against the preponderance of the evidence. These assignments cannot be sustained. While it is the right and duty of this court to reverse a judgment and grant a new trial when the verdict is so against the weight and preponderance of the evidence as to be manifestly wrong (G., C. & S. F. Ry. Co. v. Walters, 49 Tex. Civ. App. 71, 107 S. W. 372; I. & G. N. Ry. Co. v. Brice, 111 S. W. 1097), yet, as we have said at another place, the evidence in this case does not warrant such a conclusion.

[5, 6] By the seventh and eighth assignments of error appellant asserts that the evidence was insufficient to authorize the court to submit to the jury for their determination whether appellant should have sta-tioned a flagman at the Moore avenue and Callie street crossing. The settled rule in reference to the issue here raised is that if a person of ordinary prudence would, under all the circumstances, have maintained a flagman or watchman at the crossing where the plaintiff was injured, then the failure on the part of the railroad company to keep such flagman or watchman was negligence. M., K. & T. Ry. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013; Id., 49 S. W. 156; C. T. & N. W. Ry. Co. v. Gibson, 35 Tex. Civ. App. 66, 79 S. W. 351; C. T. & N. W. Ry. Co. v. Gibson, 83 S. W. 862. The court below submitted the issue under the rule announced in the authorities cited, and no complaint is made of the charge. Accordingly, the issue narrows as to whether there was evidence which warranted the submission of the issue. At another place in this opinion we have detailed the population of Terrell, and the conditions surrounding the crossing and the traffic passing over same, and that from such conditions much noise and confusion resulted at the crossing. As to whether the conditions surrounding the crossing made it difficult to hear an approaching train and rendered the crossing dangerous and hazardous, the several witnesses differed. The solution of the conflict was with the jury, and, their findings on that issue being within the rules we have hereinbefore stated, we are not authorized to disturb same, and the assignments are accordingly overruled.

[7] The ninth assignment of error complains of the refusal of the court below to permit appellant to prove by the witness Clark that after the accident he found a pint bottle in the wagon which appellee was driving containing whisky, about one-third full. On this issue appellant alleged that appellee contributed to his injury by inattention to the approaching train, due to the fact that he was drowsy as the result of drinking intoxicants. Some of appellant's witnesses testified that appellee "seemed to be in a deep study," "he was sorter bent over," "John was stooped over, looking at his horse," "he was driving along with his head down, not paying any attention; seemed in a deep study." Each of the quotations from the evidence was by different witnesses. The bill of exception was signed by the district judge, with the explanation that the witness Clark was two blocks away when the accident occurred, and before he arrived there other parties had arrived and were removing appellee; that the collision had crushed the wagon, and the bottle found by the witness was either in the débris, or that portion of the wagon bed left intact, and further that there had been no proof that Wiggins had been drinking, or any that in any manner connected him with the whisky. We conclude that the testimony quoted, while admissible on other theories, in no sense established that

appellee was intoxicated on the day of the accident, and that the finding of the bottle of whisky in the manner and at the time we have detailed was a circumstance too remote to prove intoxication, in the absence of other connecting facts or circumstances.

[8, 9] The tenth assignment complains of the action of the trial court in permitting counsel for appellee to discuss and draw deductions from the allegation by appellant that appellee was drunk on the day of the accident, and appellant's failure to prove such allegation. The court qualified the bill of exception presenting the alleged error by the statement that while no sufficient proof of drunkenness had been offered, yet the allegation had been read to and in the presence of the jury.

The eleventh assignment complains of counsel for referring to the fact, after being admonished by the court to desist, that John Maule, a witness then on the stand and being examined by appellee's counsel, had testified for appellant on the trial of another case to facts similar to those testified to in this case.

Aside from the fact that whether matters similar to those covered by the assignments above occurring upon trial are to be permitted or not is largely within the discretion of the trial court, it is not made to appear, nor can we say from an examination of the record, that the same did or was calculated to bias or prejudice the jury against appellant, or that as a result thereof the verdict is either excessive or against the weight of the evidence. Banner v. Thomas, 159 S. W. 102.

[10] The seventeenth assignment of error complains of paragraph 9 of the court's charge, which is as follows: "If you find from the evidence that plaintiff was guilty of contributory negligence as explained to you in the preceding paragraph of this charge, which proximately caused or contributed to the accident, which resulted in his injury, you will find for the defendant, even though you believe that the defendant is also guilty of negligence." The criticism of this part of the charge is that before the jury could find for appellant, they must believe that the negligence of appellee caused or contributed to the injury. In short, that under this charge the jury could not find for appellant, even though they believed that appellant did, in reference to the accident, that which an ordinarily prudent person would have done under the same or similar circumstances. We cannot agree with the criticism. The trial court, with much particularity and singular clearness, informed the jury that if any of the things alleged to have brought about the injury did in their opinion exist, and their existence was negligence, and in addition were the proximate cause of the injury, then to find for appellee, or if they did not exist, or if their existence was not negligence, to find for appellant. The court then, in order to present appel-

lant's claim that appellee contributed to his injuries, told the jury they could look to all the evidence to determine if appellee had used such care as a person of ordinary prudence would have used under the same or similar circumstances, and that if by looking he could have seen the train, or by listening he could have heard same, etc., and failed, he would be guilty of contributory negligence, and could not recover. The court then adds, by paragraph 9, here objected to, that if appellee was so guilty of contributory negligence, they should find for defendant, even though defendant was also negligent. This charge, in our opinion, is not only not misleading and confusing, as maintained by counsel, but in our opinion, accentuates the defense of contributory negligence. The charge does not permit the jury to compare the negligence of the parties, but directs the jury unequivocally that, in the event appellee's own negligence contributed to the injury, then to return a verdict against him even though appellant was also negligent.

[11] By the eighteenth and nineteenth assignments of error appellant asserts that the court should not have submitted to the jury the appellee's right to recover for loss of earning capacity, since there was no evidence in the record authorizing same, or showing impaired earning capacity. Appellee testified that before the accident he was in good health, as sound as a dollar, had never been ill, nor had the services of a physician, and had been earning $1.50 to $2 per day. His employer, in substance, testified to the same facts, based upon an acquaintance with appellee of 25 years, and adds that since the accident he has been feeble and unable to do any manual labor other than feed horses and deliver light packages. Upon the trial of the case, which was two years after the accident, appellee testified that there was still soreness in his injured parts, that he suffered day and night, at times could not sleep at all, and was compelled to use a crutch. His injuries are a crushed and broken instep and an injury to his side. His physicians say his injuries are permanent. The facts related above are, in our opinion, sufficient to authorize the submission of the issue of the loss of future earning capacity.

[12] But it is urged that neither appellee's age nor his life expectancy were proven. Appellee, who is a negro, was uncertain about his age, but placed it at 50 years, as the best approximation he could make of it, and in this statement he was not substantially discredited. Having shown appellee's injuries, his past earning capacity, and his age and present condition, together with his health, habits, and appearance before the injury, it cannot be said, in the absence of other evidence, that the failure to prove appellee's expectancy in a more precise manner prevents the submission of the issue of the loss of or impaired earning capacity in the future. G.,

'H. & W. Ry. Co. v. Lacy, 86 Tex. 244, 24 S. W. 269. The evidence did establish that before the injury appellee was in perfect health, was strong and capable, abstemious, and earned from $1.50 to $2 per day.

[13] By the twentieth assignment of error it is urged that the verdict is excessive. Our right to disturb jury verdicts is so limited and so surrounded with limitations and so well understood that it is unnecessary to here state the rule. Under the facts just recited under the eighteenth and nineteenth assignments of error, and those stated in other portions of this opinion, we conclude it cannot be fairly said that the verdict is excessive.

We have carefully examined all the other assignments of error in the brief not here specifically discussed, and because in our opinion they present no reversible error, same are overruled.

The judgment is affirmed.