### TEXAS & N. O. R. CO. v. PARRY et al.
### (No. 3461.)

Court of Civil Appeals of Texas. Texarkana. Dec. 12, 1927.

Rehearing Denied Jan. 5, 1928.

**1. Carriers ⚷➝320(28)—Carrier's negligence held, under evidence, issue for jury as to injury to passenger alighting from train.**

Issue of defendant's negligence *held* for jury in action against railroad for injuries to passenger catching her heel in mat of coach platform on leaving train, under evidence that coach was old and that there was a hole or rent in the rubber matting on the platform.

**2. Carriers ⚷➝333(1)—Passenger, alighting from train, was under no duty to inspect matting in coach passageway.**

Passenger, preparing to alight from coach of train, was under no duty to inspect matting in passageway to determine whether it was safe to step on.

**3. Carriers ⚷➝339—Alleged negligence of passenger in failing to discover hole in matting on coach passageway held not necessarily proximate cause of injury on alighting from train.**

Failure of passenger to discover hole in matting on coach passageway in time to have avoided stepping thereon, if negligence, *held* not necessarily proximate cause of injury to fe-

male passenger when her heel was caught in mat on coach platform.

**4. Carriers** ☞348(6)—**Requested instruction in connection with special issue of contributory negligence, stating under what circumstances plaintiff was contributorily negligent, held general (Rev. St. 1925, art. 2189).**

Instruction, requested by carrier in connection with submission of special issue relative to passenger's contributory negligence, to the effect that jury should find plaintiff contributorily negligent, if she could, by exercise of ordinary care, have avoided stepping in hole on matting in alighting from coach, *held* properly refused as general instruction under Rev. St. 1925, art. 2189, and as misstating law.

**5. Trial** ☞350(6)—**In action for injuries to alighting passenger, special issues as to whether coach was old and matting on car platform worn held properly refused as evidentiary.**

Special issues, requested by defendant, in passenger's action against carrier for injuries in alighting from train, as to whether matting on car platform was in good condition, and as to whether coach was old or new, *held* properly refused as evidentiary.

**6. Trial** ☞351(5)—**Relative to issues refused, issues submitted as to whether floor covering of coach was worn, due to carrier's negligence, and whether defect caused injury to alighting passenger, held sufficient.**

Relative to issues refused, issues submitted by court, in passenger's action against carrier for injuries on alighting from coach, as to whether there was a hole or rent in the covering of the floor or step of the coach, whether such hole or rent caused plaintiff to fall, and whether defect was due to carrier's negligence proximately causing injury, *held* sufficient to cover ultimate and controlling facts.

**7. Damages** ☞216(9)—**Instruction permitting plaintiff's recovery for medical attention held not error under evidence.**

Instruction permitting plaintiff's recovery of reasonable value of necessary medical and hospital attention in past, and which might be necessary in future, *held* not error under physician's testimony as to calls which he had made, and reasonable value thereof, and as to plaintiff's need for future medical attention.

**8. Trial** ☞194(20) — **Instruction permitting jury to award damages for medical attention, not to exceed sum claimed, held not error.**

Direction of court permitting jury to award damages to injured plaintiff for medical attention, not to exceed $1,000, which was amount claimed in petition, *held* not error as being on weight of evidence and instructing jury that plaintiff was entitled to that sum as a reasonable amount.

**9. Evidence** ☞18—**Value of wife's services to husband held matter of common knowledge, not required to be proved in action for injuries.**

Value to husband of wife's services *held* matter of common knowledge, which was not required to be proved in action by husband and wife for damages resulting from wife's injuries.

**10. Damages** ☞216(9) — **Even if instruction permitted husband to recover for loss of injured wife's assistance in store, without proof of reasonable value of services, instruction was not erroneous.**

If instruction permitting jury to award husband damages for incapacity of injured wife to perform her duties and services as wife included consideration of wife's former services in assisting husband in his grocery store, reasonable value of which was not shown, instruction was nevertheless not erroneous, since jury could estimate value of such casual services.

**11. Witnesses** ☞345(2)—**Proof of minor witness' conviction in juvenile court for theft held incompetent for purpose of impeachment.**

Proof of minor witness' conviction and sentence in juvenile court for theft *held* incompetent on cross-examination to impeach testimony of minor witness.

**12. Damages** ☞132(6)—**$20,000 for injuries to housewife's foot held not so excessive as to require reversal, under evidence of suffering and permanent impairment of ability to labor.**

$20,000 verdict to housewife and her husband for injuries to wife *held* not so excessive as to require reversal, where physician testified injury to foot was permanent, would become increasingly severe, and created condition of neurosis, with intense suffering, preventing physical labor.

**13. New trial** ☞56—**Jurors' statements relative to injuries to other persons, and statement of one juror that he had previously hung jury, where not shown to have influenced verdict, held not to require reversal.**

Statement of jurors during deliberation with reference to condition of other persons who were invalids and incidental expense, and with reference to injury which one of jurors had suffered, and statement of juror that in previous case he had hung the jury for the railroad company, *held* not to require reversal, in action for injuries against railroad company, where it appeared that only part of jury had heard remarks, and where it was not shown that jurors were influenced thereby in rendering verdict.

**14. New trial** ☞56—**Refusal of new trial for juror's statement that defendant railroad set aside annual fund to pay off judgments, and for discussion of plaintiff's attorney's fees, held not error, where verdict was apparently unaffected.**

Refusal of new trial for statements of juror during jury's deliberation, in action against railroad for injuries, that railroad company set aside an annual fund for paying off judgments and for jury's discussion of amount which plaintiff would have to pay attorney, *held* not error, where it did not appear that remarks improperly influenced jury in returning their verdict, or that extra allowance was granted on account of attorney's fees.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Action by Mrs. Emma Parry and husband against the Texas & New Orleans Railroad

Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Mrs. Emma Parry, a passenger, in alighting from the passenger car at Beaumont, fell and sustained injuries. She and her husband both seek to recover damages for the injuries. The negligence alleged is:

"On arriving at her destination in the city of Beaumont, about 6 o'clock of the evening of February 12, 1926, plaintiff undertook to alight from the said train, and while in the act of doing so her foot or heel caught in a hole or rent in the mat or covering of the floor or step on said car, whereby she was violently thrown down and onto the ground, and sustained serious and permanent injuries," etc.

The company answered by general denial, and specially pleaded that the injuries were the proximate result of plaintiff's own negligence, and contributory negligence. The case was tried on special issues, and the jury answered that there was, as alleged, a hole or rent in the covering of the floor or step of the coach, rendering the same defective, causing Mrs. Parry to fall in disembarking from the coach, and such defect was due to negligence, and that Mrs. Parry was not guilty of contributory negligence.

The passenger train reached Beaumont about 6 o'clock p. m. According to the evidence of Mrs. Parry, briefly stated:

"When the train reached Beaumont and came to a stop, I started to get off. I had a hand bag with me. I walked out of the door of the coach, and as I turned to the right in order to make the first step the heel of my shoe caught in the rubber mat of the platform, and I fell clear to the ground. My right foot caught in the mat. I was a half foot or a foot from the first step when I got my heel caught. I was fixing to take the first step down when the heel of the shoe caught in the mat. When my heel caught in the mat I fell clear to the pavement. It pulled the shoe heel off. * * * After I fell, I could see where my foot caught. It was an old, worn, ragged place in the mat, looking to be about six inches wide. I could plainly see it after I fell, though I did not see it before I fell. I had on low-heel shoes, and the heel went in deep enough to pull the heel off the shoe. * * * The coach I was on was not a brand new coach. It was an old coach. I was in the last coach in the train. There were other passengers in there."

Jim Ludlow, for plaintiff, testified, briefly stated:

"About February 12, 1926, I was at the depot when the train from Houston came in. I saw the accident. A lady was getting off the train, and stepped in a hole in the rubber chain (mat) on the steps as you come out of the car. The hole was in the rubber band of the first step, and was not on the platform. She stepped on the rubber band there, and, as she started to take a step, her heel caught and stayed in the hole, and she fell. I was facing her, and wanted to carry her bag. She took the heel, and pushed it back on her shoe after she got up.

The coach was an old coach. I am the boy at the depot who carries suit cases."

Appellant's evidence went to show careful inspection of the coaches before the train left Houston, and that there was no rent or hole in the rubber mat on any part of the platform or steps. The rubber mat is cemented to the platform and steps, and cannot be easily taken up. The conductor testified, in substance, that the train was composed of a baggage car, combination coach No. 65, car 15, used as a smoker, and car 869, used for ladies. This car 869, as testified about, was new, about six weeks in service, and the rubber mat new, and no defects were noted in the rubber mat. As stated, "It was in perfect condition." But the supervising inspector testified:

"I have a record showing train No. 6 going to Beaumont February 12, 1926. I inspected that train before it left. The coaches on that train were a baggage car, coach 62, coach 15, coach 869, chair car 88, and coach 719. The last two were dead-head coaches on the rear, and not in service. I found no defects or wear whatever in coach 869 in rubber matting. * * * The two dead-head coaches were behind car 869. When the train left, the dead-head coaches were locked. The doors and vestibules were also locked."

The brakeman on the train testified:

"I remember an accident when a lady was hurt in Beaumont on February 12, 1926. I remember a lady slipped down the steps. I was at the east end of the last car, and was unloading passengers. She tripped herself, and came down the steps feet first. I assisted her to her feet. She said she was not hurt. There was no hole in the rubber matting. There was no defect in the step of that coach. * * * That was the rear coach; and men, women, and children rode in there. I do not know whether it was coach 869 or not, but I know it was the last car in the train. I was riding in that coach. It was my duty to ride in the rear coach as flagman on the train."

The evidence on the whole case being conflicting about the cause of the fall, the coach Mrs. Parry was disembarking from, and the negligence vel non of the company, these were issues solely for the jury to decide.

The physical condition of Mrs. Parry and the extent and permanency of her injuries were subjects of extended evidence and sharp dispute. The evidence is clear that before her fall Mrs. Parry was a healthy, strong woman, 48 years of age, doing all her household work. The jury would be authorized to find that as a result of the fall she has become, and will remain permanently, a helpless invalid, suffering pain. There is evidence warranting the amount of damages awarded by the jury, and we do not feel warranted in disturbing the jury verdict.

Garrison & Watson, of Houston, for appellant.

Devereaux Henderson and Ewing Werlein, both of Houston, for appellees.

LEVY, J. (after stating the facts as above). [1] After the evidence was submitted, the appellant requested a peremptory instruction in its favor, which was refused by the court. It is thought there was no error, as there is sufficient proof of injury and negligence as alleged, in the light of the evidence in behalf of the appellees. The jury were authorized to believe Mrs. Parry's entire evidence that she fell from the platform of the last coach in the train, and that it was an old coach, with a hole or rent in the rubber matting on the platform or steps. There are corroborating circumstances, as well as direct evidence, in such particulars. On the other hand, the jury were authorized, as in their province, to infer that Mrs. Parry fell from the platform of coach No. 869, with its perfectly new platform and matting, and that the fall was purely accidental. There are corroborating circumstances in such particulars. In view of the conflict in the evidence, a peremptory instruction would not have been justified.

[2-4] In special issue No. 6 the court required the jury to answer whether or not Mrs. Parry used ordinary care "in disembarking from the train as she did." The appellant requested an instruction, which the court refused, termed "explanatory," that, if Mrs. Parry, "in the exercise of ordinary care, could have seen the hole in the matting, and by the exercise of ordinary care could have avoided stepping in the hole, then special issue No. 6 should be answered in the negative." The appellant's plea of contributory negligence was general. The court's charge defined "ordinary care." The special instruction does not undertake to define any legal terms. Article 2189, R. S. 1925. It is in the nature of a general instruction. Neither was the passenger under any duty to inspect, as the instruction implies, the matting in the passageway of the coach. And the instruction did not authorize the jury to determine the proximate cause of the injury. Texas & N. O. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188. Although Mrs. Parry could have discovered the hole in the matting in time to have avoided stepping in it, and neglected to do so, yet such negligence on her part is not necessarily the proximate cause of the injury. Wells-Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513.

[5, 6] The appellant requested, and the court refused, certain questions to the effect, Did Mrs. Parry ride in car 869? Was it an old or a new car? and, Was the matting on the car platform in good condition? There was no error, as the findings sought were merely of an evidentiary nature, and the issues submitted by the court sufficiently and clearly covered the ultimate and controlling fact inquired about. The evidence offered by the appellant going to show that Mrs. Parry was riding in, and alighted from, coach No. 869, and that the matting on the

platform was new, and in nowise defective, had the legal force and bearing merely as controverting evidence of the testimony in behalf of Mrs. Parry to the contrary. The ultimate and controlling facts were sufficiently and clearly covered by the issues submitted by the court inquiring of "whether there was a hole or rent in the covering of the floor or step of the coach from which plaintiff was disembarking at the time in question," and whether such hole or rent caused plaintiff to fall, and whether such defect was due to negligence proximately causing injury. The issues submitted by the court were in no wise equivocal, as asserted, or contrary to the pleadings of the plaintiff.

Exceptions were made to the measure of damages submitted to the jury in the following elements, namely:

(a) "2. The reasonable value of necessary medical and hospital attention to plaintiff Mrs. Emma Parry to this date, and the reasonable value, if paid now, of medical attention, such as may be necessary in the future, if any, in all not to exceed $1,000."

(b) "3. The reasonable value of Mrs. Emma Parry's lost ability to perform her accustomed duties and services as a wife, from the time of the alleged accident down to the trial, on account of such injuries, if any."

(c) "4. The reasonable present cash value of Mrs. Parry's diminished capacity to perform her duties and services as a wife in the future beyond the trial, on account of such injuries, if any."

(d) "In determining the value of lost or diminished ability or capacity of Mrs. Parry to perform her duties and services as a wife, you are instructed that the phrase 'services of a wife' includes in law such aid, assistance, comfort, and society of a wife in her condition at the time of the alleged injury as might reasonably have been expected of her to render to the husband in the circumstances and conditions of their environment."

The specific objections are that: (1) There was no evidence that plaintiffs had paid, or would likely have to pay in the future, "the sum of $1,000" medical bills; that limiting the amount "not to exceed $1,000 was on the weight of evidence, in effect an instruction that the plaintiffs were entitled to that sum as a reasonable amount. (2) There was no evidence showing the pecuniary value of the services of the wife to her husband, especially as to services as a clerk in the store. (3) The husband was not entitled to recover any damages for the "loss of any comfort or society of his wife," and that there was no evidence which would authorize the jury to award damages for such loss. In connection with the objections, the petition of plaintiffs charges that there has been incurred, and in the future it will be necessary to incur, medical treatment and hospital attention in "the reasonable cost of $1,000." The petition does not seek recovery for the loss of time or services of the wife as a clerk in the grocery store, but for "loss of capacity

to attend to her affairs and perform her duties as a wife."

[7] It is believed that there was no error in the court's charge. Mrs. Parry's attending physician testified:

"In addition to 82 house visits and office visits, I have made 10 visits to the hospital. That would make 92 visits, or a total of $276 as necessarily incurred, and it is reasonable. * * * From the history and observation of the case it is in my opinion permanent. The condition, instead of improving, gets gradually more severe. She will require medical attention in the future the same as she had now. My visits continue to this time; she is still under my treatment. * * * Suffering from angina spasms as high as two or three in a week's time, and last a day or two. They are recurrent. *. * * Her condition is that of traumatic neurosis, evidently received at the time of the injury. * * * She has undergone intense suffering; it is excruciating. * * * Her condition affects her strength and work. The inability to be on the injured foot would prohibit her doing her duty. The attacks of angina spasms also would. I have seen her confined to bed three days at a time from those attacks. After she gets out, she is in the bed in the room. She can do no physical labor."

[8-10] The fact that there was limitation upon recovery "not to exceed $1,000," as pleaded would not constitute error that either party could reasonably complain of. The direction to the jury was merely in no event to allow more than $1,000, claimed in the petition to be the extent of damages sought in that respect. International & G. N. R. Co. v. Slusher, 42 Tex. Civ. App. 631, 95 S. W. 717. And there is no ground upon which to sustain the other objections. It is not necessary to specially prove the value of the services of the wife, as this is a matter of common knowledge. Missouri, K. & T. R. Co. v. Vance (Tex. Civ. App.) 41 S. W. 170; City of Fort Worth v. Weisler (Tex. Civ. App.) 212 S. W. 280. The word "service," as held, "implies whatever of aid, assistance, comfort, and society the wife would be expected to render to or bestow upon her husband under the circumstances and in the condition in which they may be placed, whatever those may be." Gainesville, H. & W. R. Co. v. Lacy, 86 Tex. 244, 24 S. W. 269. Although there was some evidence that before the injury Mrs. Parry had casually assisted her husband in his grocery store, yet the loss of such special services was not included in the charge as a distinctive element of damages. Assuming the language of the charge to be general enough to permit the jury to take into consideration such element of damages, the appellant did not ask, in correction or modification, an instruction to the jury to not consider the evidence in assessing the amount of damages. But the sound answer is that the jury could estimate the value of such casual services of the wife as well as any witness likely to be called.

[11] Appellant predicates error upon the exclusion of certain evidence as ground affecting credibility of the witness Lindow, a boy 14 years old. The witness, on cross-examination, was asked, in substance, if he had not been convicted and sentenced in the juvenile court at Beaumont on four distinct counts of theft, "and let out on bond, paroled to your father." The witness would have answered, "Yes, sir, that was true;" but, under questions of the court, the witness stated, "I do not know, myself, that I was under conviction and had a suspended sentence. That is what my father told me. I was never tried in front of a judge in my life." A copy of the judgment and sentence was not offered in evidence. The evidence is doubtful in respect to conviction. The boy himself did not seem to know more than what his father purported to have stated to him. But, assuming the proof was definite in the nature of an admission of a conviction for crime, it was not, as held, competent evidence. Gulf, C. & S. F. R. Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Missouri, K. & T. R. Co. v. Creason, 101 Tex. 335, 107 S. W. 527; Jones v. Texas Electric Ry. Co. (Tex. Civ. App.) 210 S. W. 749; Southern Traction Co. v. Kirksey, (Tex. Civ. App.) 222 S. W. 702. The case of Huff v. McMichael, 60 Tex. Civ. App. 379, 127 S. W. 574, does not present the same question. In such case the record of a judgment of conviction for a felony was offered to impeach a witness. The Supreme Court (89 Tex. 394, 34 S. W. 919) reversed the case of Texas & P. Coal Co. v. Lawson, 10 Tex. Civ. App. 491, 31 S. W. 843, although upon other points.

[12] Although the amount of the judgment may be considered large, yet we do not feel warranted in disturbing the jury verdict in such matters, they being in a better position to see and form an opinion with respect to the actuality and extent of the injury than an appellate court.

[13] The fourteenth proposition relates to alleged misconduct of the jury consisting of communications between the jurors as stated herein:

(1) "That during the deliberation of the jury one of the jurors stated that his wife was an invalid, and that he knew what it meant to have an invalid wife."

As proven, the juror Ammons testified:

"We were concerned with the question of Mrs. Parry's condition, whether this nervousness and (the result of) the fall would be permanent. * * * There was some juror—who works for a furniture company—spoke of an injury. He said his wife fell and got hurt, and was laid up for quite a while. He spoke about the expense he had been to on account of it. That was in the general discussion."

He further stated that the remarks did not influence his verdict. The juror Clark, who evidently was the juror referred to, said:

"I never heard any juror state (anything) about an invalid wife. My wife seems to be in

good health. She weighs 230 pounds. She was injured once; she fell down. I do not know who had an invalid wife. I never heard that mentioned at all. I cast my vote, and was guided by the evidence."

Seven of the jurors stated that they never heard such remark. Two of them did not recollect that such remarks were made. One juror said:

"I think I did hear one say (something) about his wife having (received) an injury, but could not say what he said;" and "that did not in any way influence me."

The evidence rather shows a casual remark, and that the rights of the parties and the impartiality of the verdict were not wrongfully affected.

(2) "That during the deliberations of the jury one of the jurors stated that a friend of his mother's was an invalid, and had been for 21 years."

As proven, the juror Ammons testified:

"There were some statements made by jurors concerning matters not in evidence in the case. There was general discussion before we decided on the condition of Mrs. Parry. Mr. Jordan made the remark that his mother had a friend who had been lying in the bed for a number of years, and that he could not tell what a nervous breakdown or injury might result in."

The juror Jordan testified:

"It is a fact I made the remark in the jury room. We were talking about the injury and the extent of it connected with the injury."

Seven of the jurors said they "did not hear any such remarks made." None of them who heard the remarks were influenced in their verdict, as they say. The remark was made merely by way of analogy to reflect what the juror himself thought was the proper inference upon the evidence of the case being tried. Such inference was warranted by the testimony of the medical experts that the injuries were probably permanent.

(3) "That during the deliberations of the jury one of the jurors stated that he had suffered an injury to his arm, and was well acquainted with the trouble and inconveniences incident to an injury to one's person."

As proven, the juror Ammons testified:

"There were general discussions on the condition of Mrs. Parry. * * * Mr. Brittingham told of an injury he had (received) and how it affected him."

Juror Jordan testified:

"I think it was the amount we were discussing. * * * Mr. Brittingham told the jury about his hand. * * * Mr. Brittingham said he had several doctors treating his (hand), and they could do nothing for him, and that he went to his old doctor at his former home, and he gave him ten cents worth of iodine, and he got all right."

Juror Brittingham testified:

"I told the jury about me having an injury to my hand. I was foreman of the jury. I told the jury not to take the attitude that, because this (defendant) was a corporation, they ought to 'sock them,' and that I did not believe in doing that, and then I told them about an injury I had, and that I didn't sue the people, and that I did not believe in bringing in a larger verdict because it was a corporation."

Six of the jurors said they never heard the remarks. In one view, the remarks were purely facetious. In the other view they reflected only a desire and interest on the part of the foreman to have an impartial verdict.

(4) "That during the deliberations of the jury one of the jurors stated that a short time ago he sat as a juror in another case in which the railroad company was the defendant; that the trial resulted in a hung jury; and that, having taken such action in the former case, he was going to hold out for the plaintiff."

The juror Parletti testified:

"I remember one juror wanted to give $30,000. They were arguing with him, and he stated he was going to hold out in favor of the plaintiff because a while back he sat in another case, and in that case he hung the jury for the railroad company."

As detailed by the juror Ammons:

"There was mention of another railroad suit. The juror stated that he was on the jury once, and hung the jury for the railroad company. He said the man was killed in the railroad yards. He did not say what he was going to do in the present case. He was at one time the high man in the case."

As detailed by the juror who made the remarks:

"I had wanted to give $30,000 damages. I came down to the $20,000 (the amount of the final verdict). When I was holding out for the $30,000, I told them (some of the jurymen arguing with him) I wanted to be fair with both sides; that the last case I was on I stood out for the railway company; that in that case I thought the plaintiff was guilty of contributory negligence, and in this case I did not. That action did not influence me in giving my verdict for $20,000. I was serving as a juror. I did not discuss other cases; I spoke of it. * * * It was a casual conversation, and there was no general discussion of it."

Six of the jurors testified that they never heard such remarks. Considering the juror's explanation, as the trial court had the right to do, it is not made apparent that the statement reflects on the part of the juror unfairness, contrary to just dealing or prejudice or undue bias with regard to the nature of the case, subject-matter of the litigation, or the parties. It would be extreme to hold that a jury of reasonable men of ordinary intelligence and integrity were wrongfully affected by such remarks.

After consideration of all the above re-

marks, singly or all together, we are unwilling to disturb the trial court's conclusion that they did not improperly or unlawfully affect the jury in finding their verdict. Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606. It is thought reasonably doubtful that any juror gave the testimony in the case less weight by reason of the remarks proven. The remarks were casual and not necessarily prejudicial in their nature.

[14] By the sixteenth proposition error is predicated upon refusal to grant a new trial upon the alleged ground that the jury in arriving at the amount of their verdict wrongfully considered and granted an extra allowance on account of matters not in evidence. It was alleged:

(1) "That during the deliberations of the jury one of the jurors stated to the effect that the railroad company would not be harmed by the amount of the verdict rendered, because each year the railroad set aside a fund for the paying off of judgments and claims that might arise against it."

(2) "That the jury discussed during their deliberations the question of attorney's fees, the amount the plaintiff would get, and the amount she would have to pay her attorney."

As to the first alleged statement as proven, the juror Ammons testified:

"There was a statement made with reference to a fund the railroad company set aside to pay judgments and claims. Mr. Parletti (juror) said he used to live in Denison, and was more or less familiar with the railroad men, and that they set aside a certain amount to pay these claims with."

Nine jurors said that they did not hear the remarks, and the jurors who did hear it said that it did not at all impress them or influence their finding. The juror Ammons himself said:

"That some one said that there was a fund set aside did not make any difference to me—as far as the fund was concerned—that did not make any difference with me. I agreed on the amount with the others solely on the basis of the evidence of the witnesses on the stand, and the charges of the court; that is, I tried to do so."

It is not made apparent that the verdict itself was founded on the remarks, nor that such remarks influenced improperly the jury in finding their verdict. Houston & T. C. R. Co. v. Gray, supra. The second alleged statement as proven is substantially to the effect that several of the jurors, at three different times, "discussed" or made remarks about attorney's fees and the proportion of the damages attorneys usually got; that

each time attorney's fees were mentioned the foreman of the jury "called them down." Four of the jurors never heard mention of attorney's fees. The testimony of each of the jurymen is affirmative that the mention of attorney's fees did not "influence them in arriving at the amount of their verdict." It is believed, in view of the testimony, this court may not rightfully disturb the trial court's ruling in denying a motion for new trial on the ground of misconduct of the jury. In the present case the remarks complained of were not used by any juror to affect the verdict, and it is not doubtful that any juror granted an extra allowance for attorney's fees. Unless it otherwise appeared, this court may not disturb the trial court's conclusions. Houston & T. C. R. Co. v. Gray, supra. Eight of the jurors stood throughout for the amount of the present verdict, and two jurors who stood for a larger sum receded and agreed to the lesser sum. Only two jurors stood at any time, as appears, for less than the amount of the present verdict, and one of them, as he said, "did not hear anything about lawyers' fees being mentioned in the jury room." It is true that the juror Ammons testified that, "after the verdict was rendered, one of the jurors stated to a partner of one of plaintiffs' attorneys, in arriving at the verdict they figured the attorney would get so much." As this testimony is uncorroborated, the trial court, as in his province, had the authority to weigh it in the light of further circumstances shown, not entirely without the range of personal interest. The case is not comparable to the case of Moore v. Ivey (Tex. Com. App.) 277 S. W. 106.

The judgment is affirmed.