## MORTEN INV. CO. v. TREVEY et al.
### (No. 10098.)

Court of Civil Appeals of Texas. Dallas. May 19, 1928.

Rehearing Denied July 14, 1928.

**1. Judgment ⬿19—Pleading unsupported by evidence is unavailing.**

It is a well-settled rule of law that pleading unsupported by evidence will avail nothing.

**2. Negligence ⬿136(23)—Where defendant asserted another's negligence as defense and as basis for cross-action, issue was properly submitted, though cross-action was not maintainable.**

Where, in suit against owner of building for injuries resulting from fall of elevator, defendant pleaded negligence of express company as affirmative defense and as a basis for its cross-action, issue of express company's negligence was properly submitted to jury, though defendant had no right to recover on cross-action.

**3. Negligence ⬿116—Cross-action which alleged injuries from fall of elevator were due to breaking of cogs in wheels from negligence in unloading boxes held demurrable.**

In action against owner of building for injuries from fall of elevator, due to failure to make inspection or repairs, defendant's cross-action, alleging that injuries were due to breaking of cogs in wheels or other device through dropping or pushing of heavy boxes from truck onto elevator by express company's employees, held demurrable.

**4. Negligence ⬿134(6)—Evidence of negligence of express company unloading heavy boxes held insufficient to make issue for jury under cross-action, in suit for injuries from fall of elevator.**

In action against owner of building for injuries resulting from fall of freight elevator, evidence of negligence of express company in breaking cogs in wheels or other device through unloading of heavy boxes held insufficient to make issue for jury of defendant's right to recover in cross-action.

**5. Appeal and error ⬿1061(1)—Sustaining demurrer to evidence under defendant's cross-action instead of sustaining demurrer to plea held not prejudicial to defendant.**

Failure of court to sustain demurrer to defendant's cross-action and court's sustaining of demurrer to evidence introduced in support of the cross-action held not prejudicial to defendant, though demurrer to plea should have been sustained.

**6. Contribution ⬿5—Passive wrongdoer may recover over against active wrongdoer for loss sustained as result of injury.**

As between active and passive tort-feasors, the court permits recovery over by the passive

wrongdoer against the active wrongdoer for loss sustained as result of injury.

**7. Appeal and error ☞971(1)—In absence of specific objection, reviewing court assumes hypothetical question was in proper form.**

In absence of any objection to the form of the question, court on appeal assumes that hypothetical question was properly propounded.

**8. Evidence ☞552—Expert testimony in response to hypothetical question as to manner in which elevator must have fallen, based on witness' examination several months after accident, and on testimony of another expert, held admissible.**

In action for injuries resulting from fall of elevator, testimony of expert, in response to hypothetical question, that elevator must have fallen by virtue of the cap screws working out, permitting a side swipe, based on witness' observation of manner of construction of elevator several months after accident, and on testimony of another expert as to what he discovered at the time of the fall of the elevator, *held* admissible.

**9. Negligence ☞136(23)—Negligence of owner of building in failing to inspect or repair elevator, as result of which elevator fell, causing injuries, held for jury.**

In action brought against owner of building for injuries resulting from fall of elevator, due to defendant's failure to inspect elevator or to exercise ordinary care in keeping it in repair, issue of negligence, based on expert's testimony as to cause of fall, *held* for jury.

**10. Evidence ☞506—Admission of expert testimony as to cause of fall of elevator held not erroneous as involving conclusion upon issue in action for injuries.**

In action for injuries resulting from fall of elevator, admission of expert testimony as to cause of accident in relation to mechanical laws and processes *held* not error as invading jury's province or involving conclusion upon real issue for determination of jury.

**11. Negligence ☞45—Owner of building was not relieved from duty to exercise ordinary care to discover elevator's defective condition by purchase from reputable maker who properly installed it.**

Fact that defendant bought elevator in question of reputable maker, and that the same was properly set up and put in operation and inspected by the elevator company, did not relieve defendant from duty to exercise due care to discover defective conditions and to repair them.

**12. Negligence ☞136(23)—Issues for jury in action for injuries sustained on fall of elevator were whether elevator was out of repair immediately before accident and whether defendant was negligent in not discovering defect or in repairing it.**

Issues for jury in action against owner of building for injuries resulting from fall of elevator were whether elevator was out of repair immediately prior to accident, and whether defendant was negligent in not discovering defect or in matter of repairing it.

**13. Trial ☞350(6)—Refusal of special issues whether owner, sued for injuries, exercised ordinary care in inspecting and repairing elevator, held not error.**

In action for injuries resulting from fall of elevator, refusal of special issues requested as to whether owner of building exercised ordinary care in keeping elevator in proper repair and in inspecting the elevator after its installation *held* proper under evidence, where court submitted issues as to whether elevator was out of repair and whether defendant was negligent in not discovering and repairing defective condition.

**14. Negligence ☞125—Testimony as to unloading similar boxes upon elevator in past held admissible to show fall of elevator was not due to unloading boxes.**

In action for injuries resulting from fall of elevator, in which defendant claimed injury was due to unloading of heavy boxes thereon by express company, testimony of witness that he had unloaded similar boxes and packages on elevator before, and that no injury resulted, *held* not error as an attempt to prove want of negligence by custom.

**15. Negligence ☞125—Proof offered to show cause and effect is not rendered inadmissible by rule excluding proof of negligence upon prior occasions.**

Rule that carefulness or negligence upon some other occasion cannot be shown to prove carefulness or negligence on occasion in question does not apply to proof offered for purpose of showing law of cause and effect under like conditions.

**16. Negligence ☞124(3)—Testimony that express company, charged with negligence, loaded boxes on elevator in usual manner, held not inadmissible as disproving negligence by custom.**

In action for injuries resulting from fall of elevator, in which defendant claimed fall was due to manner of loading, testimony that express company loaded boxes on elevator in usual manner *held* not incompetent as involving attempt to prove lack of negligence by custom.

**17. Negligence ☞139(1)—Instruction defining negligence in action submitted on special issues, though applied to facts of case, held not erroneous.**

Instruction in action for injuries resulting from fall of elevator, submitted on special issues, that defendant was under duty to exercise degree of care which person of ordinary prudence would exercise under like circumstances to discover and repair defective condition, and that failure upon its part to do so would be negligence, *held* proper as giving definition of negligence, though subject to criticism on account of context of instruction.

**18. Trial ☞191(11)—Instruction submitting measure of damages from injuries resulting from negligence, if any, of defendant, held not erroneous as assuming negligence.**

Where defendant sued for injuries for fall of elevator, claimed that third party was negligent, instruction permitting plaintiff to recover damages resulting directly and proximately

from negligence, if any, of the defendant, *held* not erroneous as assuming that injuries were result of defendant's negligence.

**19. Negligence ⬅32(2)—One going to hotel to make delivery and take up hotel owner's complaints held invitee, as to whom owner owed duty to keep premises in reasonably safe condition.**

One who went to hotel to complete delivery of shipment of meat and take up owner's complaint as to former shortages was an invitee, as to whom the owner of the premises owed duty of keeping them in reasonably safe condition for his use.

**20. Negligence ⬅32(2)—Invitation of owner of premises is implied, where person goes there for benefit of owner or mutual benefit, or in usual course of business.**

Invitation by owner or occupant of premises is implied by law, where person going on premises does so for the interest or benefit of the owner or occupant, or in matter of mutual interest, or in usual course of business.

**21. Appeal and error ⬅930(3)—Failure to make finding on proximate cause held not fatal, where issue was not requested; finding being presumed in support of judgment (Rev. St. 1925, art. 2190).**

In action for injuries resulting from fall of elevator, alleged to be due to negligent failure of owner of building to make inspection and repairs, submitted on special issues, in which defendant claimed express company was negligent in manner of loading boxes, absence of finding that defendant's negligence was proximate cause of injuries *held* not to require reversal under Rev. St. 1925, art. 2190, where issue was not requested, since finding was implied in support of judgment.

**22. Trial ⬅156(3)—Recovery from defendant for injuries sustained in fall in elevator held not precluded by third party's demurrer to evidence in defendant's cross-action.**

In action for injuries sustained in fall of elevator, in which owner of building, sued for negligence, claimed express company was liable on account of negligent manner of loading elevator, express company's demurrer to evidence did not prevent plaintiff's recovery from owner of building on ground defective condition of elevator was result of defendant's negligence in failing to inspect and make repairs.

**23. Damages ⬅132(9)—$12,500 to 55 year old deliveryman, earning $110 a month, for permanent injuries to foot and heel, preventing performance of manual labor, held not excessive.**

$12,500 damages to one making deliveries, earning $110 a month, and 55 years old, for permanent injuries to foot and heel from fall in elevator, which prevented performance of any manual labor, *held* not excessive.

Appeal from District Court, Dallas County; Claude M. McMallum, Judge.

Suit by W. S. Trevey against the Morten Investment Company, in which defendant interposed a cross-action against the American Railway Express Company. From an adverse judgment, defendant first named appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Robertson, Robertson & Gannon, Wallace & Taylor and Carden, Starling, Carden & Hemphill, all of Dallas, for appellees.

VAUGHAN, J. This suit was brought by appellee, W. S. Trevey, against appellant. Morten Investment Company, a private corporation, in the court below to recover damages for personal injuries alleged to have been received by him through certain acts of negligence charged to have been committed by appellant, viz.: That, while said appellee was riding upon a freight sidewalk elevator belonging to appellant, the elevator fell, causing him to be seriously injured, and that the fall of the elevator was due directly and proximately to the negligence of the appellant, in that said appellant was negligent, "* * * in that it used the said elevator when the same was in bad order and out of repair, and in that it failed to inspect the said elevator, or to exercise ordinary care so to do, and in that it failed to exercise ordinary care to repair the same."

Appellant answered by general demurrer, a general denial and specially pleaded to the effect: First, that the elevator was of standard make, and that it exercised ordinary care in selecting the elevator and in putting it in operation, and that, if there was any defect in the materials thereof, the company was not an insurer of the elevator or the materials thereof, and was not liable; second, that, if the appellee Trevey was injured, his injuries were the direct and proximate result of the acts and conduct of persons who were not agents, representatives, or employees of appellant, but were employees of American Railway Express Company, a private corporation, and one of the appellees; third, that the employees of the appellee railway express company negligently dropped or pushed a heavy box from a truck onto the elevator, breaking the cogs in the wheels or other device in the elevator which operates it up and down, causing the elevator to give way and fall; fourth, that the dropping of the box on the elevator by appellee express company, and the breaking and disabling of the elevator, was the direct, sole, and proximate cause of appellee Trevey's injuries, and that the appellee express company was the active perpetrator of the wrong, and prayed that the appellee railway express company be made a party defendant, and, in the event appellee Trevey should recover judgment against appellant, that it have a like judgment over against the appellee express company.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The appellee express company filed a plea in abatement because of a misjoinder of parties defendant, and because of a misjoinder of causes of action, and, subject to that plea, and without waiving it, filed its answer pleading a general demurrer, special exceptions pointing out the misjoinder of parties and of causes of action, and a general denial. The said pleas in abatement were overruled. To this ruling of the court appellee express company duly excepted. Thereafter the general demurrer and special exceptions of said appellee were presented to the court and each overruled, to which action of the court said appellee duly excepted. At the conclusion of the introduction of all the evidence, appellee express company presented to the court its motion to instruct the jury to return a verdict in its favor, and also presented a demurrer to the evidence. The requested peremptory instruction was refused, but the court sustained the demurrer to the evidence. In refusing to give the peremptory instruction, the court gave as a reason "because of sustaining a demurrer to the evidence, which the court feels is, under all the circumstances, the better way to effect the same result." Thereupon the trial proceeded as between appellee Trevey and appellant. Special issues were submitted to and answered by the jury as follows:

"Special issue No. 1: Do you find and believe from the evidence that, in the unloading of the boxes by the American Railway Express Company upon the elevator in question, at the time testified about, they struck such elevator with sufficient force or violence to break the cogs in the wheels or other device in the elevator which operates it up and down, and that this was the direct, sole and proximate cause of the falling of the elevator? Answer 'Yes' or 'No.' Answer: No.

"If you have answered special issue No. 1 in the affirmative, you need not answer the following questions, but, if you have answered special issue No. 1 in the negative, or by 'No,' then you will answer the following questions:

"Special issue No. 2: Was the defendant's elevator out of repair immediately prior to the time the express company placed the boxes of meat on it? Answer 'Yes' or 'No.' Answer: Yes.

"Special issue No. 3: Was the defendant negligent in not discovering, prior to plaintiff's injury, the defective condition, if any, of its elevator? Answer 'Yes' or 'No.' Answer: Yes.

"Special issue No. 4: Was the defendant negligent with reference to the matter of repairing the defective condition, if any, of its elevator? Answer 'Yes' or 'No.' Answer: Yes.

"Special issue No. 5: What sum, if paid now, will reasonably compensate plaintiff for his diminished capacity, if any, to labor and earn money in the past, if there has been any in the past, and in the future, if you find there will be any in the future, and his physical and mental suffering in the past, if there has been any in the past, and in the future, if you find there will be any in the future, resulting directly and prox-imately from the negligence, if any you have found, of the defendant, Morten Investment Company upon the occasion in question? Answer: $12,500."

Appellant filed its motion for judgment to be entered in its favor on the findings of the jury; likewise appellee Trevey filed his motion to the same effect. Appellant's motion was overruled, appellee's sustained, and, on February 19, 1927, judgment was rendered on said verdict in favor of appellee Trevey against appellant for the sum of $12,500, with interest thereon at the rate of 6 per cent. per annum from January 5, 1927, together with all costs of suit, and in favor of appellee express company on the cross-action filed by appellant. From this judgment, appellant duly perfected its appeal.

The findings, in response to the special issues submitted, being supported by the evidence, are adopted as facts found by this court, and, in addition thereto, other findings of fact will be made in the course of the discussion of the propositions upon which this appeal is predicated.

By its first and second propositions, appellant contends (a) that under the state of the pleadings between appellant and appellee express company, said appellee's plea in abatement having been overruled, that it was error for the court to permit the entire trial to proceed and at the close of the introduction of the evidence to sustain appellee express company's demurrer to the evidence offered by appellant upon the same ground that the plea in abatement was offered; and (b) that it was error to sustain said demurrer because same admitted all facts of which there was any evidence, and all conclusions which could fairly and logically have been drawn therefrom, there being evidence in the record tending to establish such facts, and from which such conclusions could be drawn, as the very issue as to whether or not the dropping of the boxes broke the elevator and caused the accident was submitted to the jury.

[1, 2] As we view this theory of the case, even if it should be conceded that the proof introduced in reference to the falling of the elevator established the issue presented by appellant's cross-action against appellee express company, as to the cause of the falling of the elevator, the only legal effect that could have been given thereto would have been that there was thereby established a complete bar to the right of appellee Trevey to recover against appellant on the ground of negligence alleged by said appellee Trevey as constituting his cause of action and right to recover thereon against appellant without any right of recovery by appellant against appellee express company, as appellee Trevey could not recover, either against appellant or appellee express company on the grounds of negligence alleged by appellant

against appellee express company as being the proximate cause of the falling of said elevator. However, the evidence clearly established that the falling of the elevator was not caused by the acts of negligence alleged by appellant in its cross-action to have been committed by appellee express company, but, to the contrary, clearly demonstrated that the falling of the elevator was due to the acts of negligence alleged by appellee Trevey against appellant. Under the state of appellee Trevey's pleadings, appellant could only make out a case of recovery on its cross-action against appellee express company by showing that, if the elevator was caused to fall by the acts of negligence alleged by appellee Trevey against appellant, appellant was only passively guilty of such acts of negligence, and that appellee express company was actively guilty of the acts of negligence so alleged—in other words, the principal actor in the commission of the acts of negligence so alleged by appellee Trevey. Appellant's cross-action against appellee express company was predicated upon the allegation that an employee of the express company dropped a heavy box on the elevator and broke it, causing it to fall and hurt appellee Trevey.

It is a well-settled rule of law that a pleading unsupported by evidence will avail nothing. The evidence relied upon by appellant is not only wanting in support of its allegations against appellee express company, but negatives any negligence on its part. The evidence fails to show that the appellee express company did anything to break the elevator or to cause it to fall, but, to the contrary, that said appellee was not guilty of negligence in the unloading of the boxes, in that the act of unloading same did not break or in any respect contribute to the cause that produced its fall. The only grounds urged to the action of the court in sustaining the demurrer are: First, that, in submitting to the jury the issue as to whether or not appellee express company's dropping the boxes on the elevator broke it and caused it to fall, it was manifest that in the court's opinion there was evidence on such issue; and, second, the court should have sustained the pleas in abatement instead of waiting to the close of the evidence and then sustaining the demurrer thereto. As to the first ground, appellant not only alleged the acts of appellee express company as a basis for its cross-action against it, but, as an affirmative defense to appellee Trevey's cause of action, pleaded that the falling of said elevator was caused by certain acts of negligence committed by appellee express company. This required the submission of that defense to the jury, as same existed independent of any right on the part of appellee Trevey to recover against appellee express company on account of the acts of negligence so alleged

by appellant in its cross-action against appellee express company, and did not depend in any respect upon the right of appellant to recover against appellee express company on account of the acts of negligence alleged in appellant's cross-action against said appellee; the acts of negligence so alleged being entirely independent of and different to the acts of negligence alleged by appellee Trevey against appellant.

We will now discuss the case as made by the evidence as to the acts of negligence that caused the elevator to fall.

G. Pounds, witness for appellee Trevey, driver for appellee express company, who unloaded the two boxes of meat, testified substantially as follows: That he unloaded the boxes very carefully; that the gross weight of the boxes was about 350 pounds each; that the boxes were practically about 3 feet square, filled with meat and ice; that he backed the truck up to the curb, the front of the truck being about 2 or 2½ feet higher than the sidewalk level at the point where he unloaded said boxes onto appellant's elevator; that the tailgate of the truck was first lowered the distance from the tailgate and the curb, being about 20 inches; that he, without assistance, unloaded the boxes; that he slid same on said tailgate, and then got down on the elevator and eased the boxes off; that he did not turn the boxes loose at any time from the time they left the tailgate until they were placed on the elevator platform; that he knew that the boxes were very carefully unloaded, because the lids were not nailed down securely, and, if not handled carefully in unloading, the lids would come off and the meat fall out; that the elevator did not move downward at all when the boxes were loaded on it, but that it remained stationary.

J. R. Harrison, appellant's witness, testified that he superintended the job of installing the elevator on the sidewalk at the Jefferson Hotel; was sure it was installed right; that he was a practical elevator man, and understood the mechanical construction and how to properly install the machinery; identified the blueprints by which same was installed; that the work of installation was mechanically proper and correct, and was inspected after the completion of the work, and was in good working condition when delivered; that he was connected with the American Elevator Company, and had been for about 14 years; that after the fall of the elevator in question he, at the request of appellant, went down and looked the situation over, saw the condition it was in—all broken up and the six-foot shaft was broken loose at one end and swinging around—that he sent his son, George Harrison, and one Gus Farrar to repair it. Said witness described the service of cap screws in the matter of holding the frame of the elevator to the bed plate; stated the

cap screws are screwed down into the bed plate; that the vibration of the machinery has a tendency to make these cap screws or bolts work loose; that in the operation of an elevator it is necessary every now and then to go around and tighten all bolts, especially the cap screws or cap bolts, as they will not stay tight; that a good machinist looks over his machinery every now and then and tightens it up; that even the best elevator that the American Elevator Company makes, propery installed by a master workman exactly correct as possible so that there will be nothing wrong with the installation, yet if the engineer does not look after it and keep the nuts tightened up, he is going to have trouble; that the cogwheels are at the bottom of the elevator shaft at the basement; that, when the elevator is being operated, if the cap screws or bolts have worked up loose until the boxing begins to pull up as much as half an inch, the cogs will begin to unmesh and get in shape where they will slip by, and the elevator will go down without being under control when the power is applied and the brakes released; that, as long as all the cogs are in mesh, the elevator can come down with but one speed, and, when out of mesh, only gravity pulls the elevator and load down; that, if the cap screws are not kept tight, anything is liable to happen; the thing that did happen is what is liable to happen if the cap screws are not kept tightened up; that he found the cap screws sheared off that held the big shaft; that, if the cap screws were loose at all, the elevator would jerk up and down, would let it slant, the weight of the elevator and the load being on the cogs. As to the falling of the boxes, as each was placed on the platform of the elevator, he stated:

" * * * It would have broken the teeth" (of the cogs). "I would just think the jar of this box at the time must have broken it. Having installed the elevator, and having seen the wreck after it occurred, it is my opinion; that is what I thought at the time."

In this connection, it is well to state it was agreed between the parties "that the elevator was bought of a reputable maker, standard make and form, and set up and put in operation and inspected." J. R. Harrison further testified that the elevator was of 2,000 pounds capacity, but constructed so that same would sustain 1,000 pounds additional weight; that the drum shaft was sprung.

George H. Harrison, witness for appellee Trevey, testified to the following facts: That he assisted in installing the elevator; that from the basement to the sidewalk is about 16 feet; the elevator was a direct motor-driven two-gear, run by electricity; that he next saw the elevator about two years after it was installed; that he had charge of the work of repairing the elevator after the accident in question, about January 26, 1924; that he is an elevator mechanic; at the time he examined the condition of the elevator for the purpose of repairing it, the base of the elevator was in the pit flush down on the shaft; that, when pulled out of the pit, he found the bearing sheared off at base; several teeth were broken in the gear that held the drum in place; that the gear and drum are all on one shaft, the shaft was about 8 feet long by two inches thick, with a drum on each end, and runs the way the elevator is moving (that is, if it is going up, it runs to the left, and, if down, to the right); when the elevator is coming down, the cable unwinds; when going up, it winds up on the drum; that the shaft is held in place by four five-eights inch in diameter cap screws and two dowel pins; that he found all four cap screws entirely sheared off where they fit through the base, one dowel pin broken, and the other one was bent in the same bearing; the shaft was lying in the bottom of the pit; the body of the bolts or cap screws were in the bed plate and had to be drilled out; four or five of the teeth were broken off the cog that worked on the drive shaft that pulled the elevator; that the small cog is a driving cog, and the big cog is the one that pulls the elevator; the teeth were broken off the big cog.

Appellee Trevey's witness, Charles J. Hutchinson, an expert mechanical engineer, especially versed in the principals of the construction, operation, use, and maintenance of elevators operated by electric power, testified as such expert in answer to hypothetical questions by appellee Trevey, viz.: That he had examined thoroughly the elevator in question and knew how it was constructed; that it is what is termed an electrical elevator operated by a motor which rests on a bed; that there is a shaft that runs through the motor and into a worm driving gear; the motor is on the west side of the pit and the line or drive shaft runs east and west along the bed of the plate. On the east end of the drive shaft is a worm gear that drives the meshes to which another worm gear is attached, and on which there is a drive pinion; that drive pinion meshes into a gear that is on the cable drum, and, when the power is applied through the motor and the main shaft to the worm gear and through the driving pinion to the driving gear, the drums on which the cables wind and unwind turn and either lower or raise the elevator; that between the motor and the driving gear on the main line shaft is a brake drum, also operated electrically; the brake drum is operated in two sections, one on each side; across the top of an extention that comes above the brake drum is a tension rod, on each side of which is a tension spring, one

that can be tightened or loosened so as to give the pressure necessary to hold whatever load would be the original capacity of the elevator; that, when the electricity is turned on and the motor starts, it immediately releases the mechanism right along the side of the drum allowing the brake band to loosen, and the minute the electricity is cut off the motor stops; there is a reverse action of that mechanism which draws that lever down and forces the bands in against the drum; that there are four cap screws on each corner of the boxing; about half way down the cap screws there is a hole in the boxing that is meant to retain the dowel pins; that is a base between the cap screw holders; that acts in a dual capacity, it not only allows the boxing to get into place and holds it so that, when the cap screws get in there is a hole there between the cap screws and the base without having to move around, and it also acts as a guide to keep the boxing from moving sidewise and coming out of line; the cap screws go through holes in the four corners of the boxing to hold it rigid, down in place; the boxing has a flange on each side with holes through; the cap screws are put into those four holes; the dowel pin is halfway between the two bolts on each side (that is, a pin of steel set in a hole in the bed plate slightly pointed at the top to allow the hole that is in the box to receive it quickly and easily); that. he knew nothing about the conditions that obtained at the elevator before or immediately after and following its fall at the time appellee Trevey was hurt; that he got that information from witnesses who observed it at that time; that at the time he examined the elevator it was in operation, back together and working all right; that the gears are called cogwheels; the little cogwheel is a pinion, and the power operating that pinion is applied from the motor through the line shaft into the pinion, and this pinion drives the other cogs; that there is no power except as furnished through that pinion; that the power starts at the motor and causes this shaft to turn, and that cog pinion wheel transmits the power or furnishes the power into this, cog gear; that there are two cogwheels working together, commonly known as pinions or a gear; that the smaller cog is always known as a pinion.

A. J. White, a witness for appellant, testified to the following facts: That he was in the service of appellant from some time in 1907 to May 1, 1925; that during that time his duties were to keep track of all the machinery, with the exception of the ice machine; had under his supervision the freight elevator in question; that he saw the elevator on an average of from one to six times a day; that a close inspection would come during the time he oiled same, which was about twice a week; that he remembered the accident in question;' could not say how long before that he had looked at the elevator; that he inspected the cap screws that hold the shaft down to the bed plate twice a week; that he had had 10 years' experience altogether running such machinery; that he never at any time saw the elevator boxing wobbling; that he could not say just when. he had tightened the cap screws, or that he had ever tightened them in .his life; that, when the elevator was installed, if the cap screws were set right and tightened up, in the .very nature of things he would expect them to get loose any time; that, if he tightened them up, he would again expect them to get loose, and so on as long as the elevator operated; that, if he never tightened the cap screws up, the reasonable probability was that they in the course of time would work loose.

The blueprint, identified by Mr. J. R. Harrison, as a plan by· which the elevator was installed, was identical in detail with the drawing made of the elevator as it was repaired after the accident. His testimony and that of the witness Hutchinson is identical in every detail as to the mechanism and operation of the component parts of said machinery being the same from the time of installation up to the accident, and from the time of the accident up to the time of the trial of the cause. In other words, the entire evidence of the witnesses White, J. R. Harrison, George H. Harrison, and Hutchinson show conclusively that the construction, design, and condition of the elevator remained the same from the date of construction to the date of the trial, except the time it was disabled by the accident; there is not a line of evidence to the contrary, or any material difference reflected in the testimony of the witnesses descriptive of the mechanism of the elevator, its construction and operation. The two diagrams and picture of the elevator offered in evidence by the respective parties exclude the possibility of there being any material difference, same fully describing and agreeing as to details. As to the condition of the elevator as the result of the fall, it was shown beyond the peradventure of a doubt that three or four bolts were broken, a dowel pin broken, and one twisted, some teeth broken out of the cogwheels, and that the elevator fell to the bottom of the pit.

We will now review the testimony of the witness Hutchinson as to the cause of the falling of the elevator.

The understanding which the· witness Hutchinson had of the testimony of the witness George Harrison briefly is, that four cap screws on the machine base were sheared off at the bed plate; one of the dowel pins was sheared off and the other dowel pin was still in place, but bent; that there were some four or five teeth of the big cogwheel broken

out of the edge of it; and that the bearing of the shaft was pulled up out of its bed so as to disengage the two cogwheels.

In answer to a hypothetical question, based upon the above facts, witness Hutchinson testified on direct examination, in reference to what caused the elevator to fall; that is, testified to what in his opinion as a mechanical engineering expert was the cause under all of the facts, as revealed to him by his examination of the elevator after it had been repaired, as testified to by him, and the testimony of other witnesses as to its condition from the time the elevator was installed up to the time of the trial, viz.:

"From my inspection down there, and from a consideration of the facts as you have outlined, as a mechanical engineer, I have formed an opinion as to this elevator falling. That opinion is based on the testimony as to the condition it was found in by the elevator men when they went there to repair it, and the character of the mechanical condition that was found at that time.

"Where your pinion gear meshes into your driving gear on the drum shaft, they are both anchored down by the bearings, as I have already explained. The cogs intermesh with each other a certain distance in the rotation of these wheels. One will fully mesh and two partially mesh all the time. In this particular mechanism (referring to the elevator in question), taking the diameter of the gear pinion and its position with the other, in order to make an elevator fall, there would have to be a positive side thrust so as to disengage the driving pinion from the operating gear. That would have to be a positive side thrust in order to break these cap screws, which have a fairly high strength and there must have been some reason for that. In any mechanism, where gears are meshing all of the time, and where boxings are set close, all its gears have a constant vibration, a vibration is very hard to overcome to such a point that you can keep the machinery and cap screws from loosening; that is more particularly true, as I say, where the cap screws are close to the gears; that can happen in other instances. The constant vibration will cause those cap screws to come unwound and unscrewed. Now, as I remember the testimony, the four cap screws were broken off and one dowel pin broken, but the other dowel pin was still in place but bent. Now, had those boxings above been screwed down tight to the bed plate at the time that side thrust was placed against those screws and that shaft, the dowel pins, as well as the cap screws, could have been sheared clear at the bed, so, in order for the dowel pins to not have remained intact, at least one of them, would show negligence in the looking after that machinery to the extent that these cap screws were allowed, through their constant vibration when the elevator was in operation, to loosen up to the point that where the elevator, which is suspended by the cables to this drum, would shear off. It has an upward lift on it at all stages of the game. It has an upward pull on the cap screws whether operating or not. The entire strain of the weight of the elevator, plus the cable and the load, is on the heads of those cap screws. There is only one way that shearing action could take place without shearing every-thing off at the bed plate, especially if those cap screws were allowed to loosen to the point where the suspended weight tips the boxing up against the heads of the cap screws all the time and in lifting that up, allowed the cogs to disengage to such an extent that when the psychological moment came, instead of remeshing, two of the cogs came together, and, when they did, that side thrust came; one side of the boxing may have been loosened up a little higher than the other to break one dowel pin and not break the other."

[3-5] The careful consideration we have given the record of this case has induced us to reach the conclusion that the court could have properly sustained either the demurrer of appellee express company to appellant's cross-action, or given the peremptory instruction requested by said appellee, and that perhaps under all the circumstances it would have been better to have sustained the demurrer to said plea rather than to have sustained the demurrer to the evidence introduced in support of appellant's cross-action. In so far as the effect of the proceedings had to prejudice appellant's position before the jury, there could have been little or no difference if the peremptory instruction had been given instead of sustaining the demurrer to the evidence, as either one of said methods of bringing to a conclusion the issue between appellant and said appellee would have been based upon one and the same reason, viz.: The insufficiency of the testimony to show a right of recovery on appellant's cross-action against said appellee, and the elimination of that issue from the trial by either one of said methods would have been brought within the knowledge of the jury, while the sustaining of the demurrer to the cross-action would have perhaps left the jury without any information as to the grounds upon which the court acted in that respect. The record is silent as to whether or not the demurrer to the evidence was sustained in the presence of the jury. However, if it should be conceded that the jury was fully advised as to the court's proceedings in this respect, we cannot assume that, as to the issue as to whether or not the alleged acts of the appellee express company, urged as a matter of defense by appellant to appellee Trevey's cause of action, was improperly considered, or that the jury disregarded the evidence offered by appellant in support of that issue because of the action of the court in sustaining the demurrer to the evidence. We therefore hold that, notwithstanding the fact that the court should have sustained appellee express company's demurrer to appellant's cross-action, the failure to do so was not such error as could have in any respect materially affected appellant's rights.

It is true that J. R. Harrison, appellant's witness, testified that, if the boxes were dropped a distance of 22 inches onto the elevator, he thought that would break the teeth

of the gear and cause the elevator to fall. However, on cross-examination, he said he was not a technical mechanic or an electrical engineer; that he was in a big hurry when he looked at the elevator after the accident; that he only glanced at it, and, in giving his opinion as to the cause of the falling of the elevator, it was "just a mere guess on my part"; and, further, that he did not think the fall of the elevator resulted from the boxes being dropped on it, but 'that it was due to a failure to keep the cap screws down tight so as to prevent a separation of the gears.

As to the testimony of P. E. Walling, appellant's witness, it is sufficient to say his testimony clearly shows that he was not testifying to facts that occurred at the time appellee Trevey was hurt, therefore his testimony was of no probative effect.

A. J. White, appellant's witness, ventured no opinion, as to the cause of the falling of the elevator.

We gather from the testimony of Charles A. Hutchinson, one fully qualified to give an opinion as to the cause of the falling of the elevator, which was not seriously controverted, that, had the boxes been of tremendous weight and been dropped a great distance on the elevator, it was his opinion that the elevator would not have fallen, although the platform might have been broken and the elevator might have been pushed to the bottom of the pit, yet the teeth of the cogs or other machinery controlling the operation of the elevator would not have been broken, and the elevator would not have fallen; that it was a mechanical impossibility for the dropping of the boxes, as alleged by appellant, to have broken the elevator and caused it to fall.

[6] As between active and passive tortfeasors, the law permits recovery over by the passive wrongdoer against the active wrongdoer. Appellant urges that this was an issue in the case made by its cross-action. To this contention we have been unable to agree, for the reasons heretofore stated. And, as to the case made by the evidence, the principle was not applicable, the jury having found by its answer to special issue No. 1, under evidence sufficient to support the finding, that appellee express company was not guilty of any wrongdoing, and that it did nothing to break or cause the elevator to fall. Manifestly, therefore, there was but one wrongdoer—appellant—so of course it could have no recovery over against appellee express company.

Appellant contends that it was error to permit the witness Hutchinson to testify that, by observing the manner of the construction of the elevator as it existed in July, 1924, and by being informed of what the witness George Harrison had discovered at the time of the fall of the elevator, the only way said accident could have occurred was by virtue of the cap screws working out half an inch, permitting a side swipe by virtue of the cogs becoming unmeshed and the elevator thus falling; there being no evidence in the record that the construction of the elevator in July, 1924, after the accident, was the same as it was in January, 1924, at the time of the fall. The cause of the fall of the elevator and the cause of the accident being the issues the jury were to determine, the expert testimony of said witness was not admissible to prove said issues. It will be noted that the witness testified to all of the facts upon which he based his opinion, viz.: As to the mechanism which made it probable for the cap screws to work loose and the cogs to fail to mesh and produce thereby a lateral motion, and that his understanding of the facts testified to by the witness George Harrison were fairly and accurately stated, as revealed by the testimony of said Harrison in reference to the particular facts testified to by him upon which Hutchinson, as an expert, was called upon to base his opinion—in fact, no material difference can be discovered in any of the essential facts as testified to by the witness Harrison and the testimony of the witness Hutchinson as to his understanding of same. Briefly, it is that four cap screws of the identified boxing were sheared off at the bed plate, one of the dowel pins was sheared off, and the other dowel pin was still in place but bent, and that there were some four or five teeth of the big cogwheel broken out of the edge of it and that the bearing of the shaft was pulled up out of its bed so as to disengage the two wheels. The mechanism of the elevator was fully described by each of the witnesses, each agreeing in all material respects. Two diagrams and a picture were offered in evidence by the respective parties, each fully describing and all agreeing in the material details. We have not been able to discover any difference between the plans by which the elevator was constructed and what was offered in evidence by the appellant and that which was offered by appellee Trevey, and which was prepared by the witness Hutchinson from the conditions which he saw down there in July, 1924. In other words, we gather from the evidence that no one can read the descriptions of the design of the elevator, as detailed by the four witnesses Hutchinson, the senior and junior Harrison, and White, without at once identifying them as being in reference to the same piece of machinery. We think that no other conclusion can be reached from the evidence as a whole than that there was no change whatever in the condition during the interim between the dates mentioned, and that George Harrison's testimony in reference to the condition in which he found same was undisputed, and that the testimony of the witness Hutchinson, as an expert, was based upon the assumption that the facts testified to by said Harrison were true, not that they were in fact true, that being left to the jury to determine as a matter purely within their province, viz. whether the testimony in ref-

erence to the condition of the elevator before, at the time and after the accident was true.

[7, 8] The witness Hutchinson testified, as an expert, in answer to a hypothetical question properly propounded, at least we are to so assume in the absence of any objection to the form of the question, and the effect of his testimony was not that, as a matter of fact, the things testified to by him existed, but that, as an expert, based upon certain facts being true, such a result in his opinion would necessarily within the range of reasonable probability be the natural sequence. The effect of the testimony of this witness was not to prove the cause of the fall of the elevator and the cause of the accident, but that the falling of the elevator in his opinion as an expert could only be caused by certain mechanical defects or displacement of parts, such as described by the witness George Harrison, through failure to properly inspect and keep the parts of the elevator in proper working condition, so that the necessary mechanical co-operation of the various integral parts would result in governing the movement of the elevator. The testimony of the witness George Harrison was only assumed to be true as the basis for the opinion of the witness Hutchinson as an expert, and whether or not the testimony of the said witness Harrison was true was a matter left exclusively to be determined by the jury, and the testimony of Hutchinson did not in any respect invade the province of the jury to be the judges of the facts proven, the weight to be given to the testimony, and the credibility of each witness. The testimony of the witness Harrison we think was clearly a proper subject for expert testimony. G. C. & S. F. Ry. Co. v. Ford (Tex. Civ. App.) 143 S. W. 943; M., K. & T. Ry. Co. v. Sherman (Tex. Civ. App.) 53 S. W. 386; I. & G. N. Ry. v. Mills (Tex. Civ. App.) 78 S. W. 11; Decatur Cotton Seed Oil Co. v. Belew (Tex. Civ. App.) 178 S. W. 613, pars. 12–14; McCray v. G., H. & S. A. Ry., 89 Tex. 172, 34 S. W. 95; Gainesville, H. & W. Ry. Co. v. Lacy, 86 Tex. 249, 24 S. W. 269. The undisputed evidence established that the elevator was propelled by electricity, which through a worm gear revolved a shaft carrying a small cogwheel which meshed into and revolved a large cogwheel attached to another shaft, which latter shaft, called the larger shaft, furnished the power which moved the elevator up and down and held it in place; that when these cogwheels became unmeshed there ceased to be any power upon the larger shaft, and the weight of the elevator was left uncontrolled and unchecked by the only mechanism that normally controlled and checked it, viz. this large shaft. Hutchinson for the appellee Trevey and Harrison for the appellant agree that normal meshing is one tooth fully and two partially meshed, and that the elevator was bound to fall when such cogs became fully unmeshed. The undisputed fact is that the shearing of the cap screws was the only

thing which directly and immediately released the cogwheels sufficiently to fully unmesh or disengage the teeth of the cogwheels so as to leave the larger shaft without any power or control of the elevator. From all of the testimony in reference to the falling of the elevator, it was clearly and definitely established that the fall of the elevator was caused by the shearing of the cap screws, and this was even pleaded by appellant as being the cause of the fall of the elevator. Therefore, when the witness Hutchinson so testified, he simply expressed an opinion upon an undisputed fact. The real mechanical issue involved was the cause of the shearing of the cap screws. There was no controversy in reference to this. Appellee Trevey contended that the cap screws holding the plate which kept the larger shaft in place had gradually become unloosened and unscrewed so that the weight of the elevator gradually pulled the cogs in the larger wheel away from the cogs in the smaller wheel until such a time as they refused to mesh normally, but two cogs (i. e., one upon each other) met end for end, creating a side thrust which sheared the loosened cap screws and permitted the elevator to fall, which fall broke the cogs in the larger wheel, destroying all power of control of the elevator. Appellant contended that, when the boxes, alleged to have been thrown by appellee express company, struck the elevator, it broke one tooth in the cog gear, but that the elevator did not give completely away until it descended about half way to the basement; that said tooth then broke off completely and jammed between the gear and the main bearing gear causing the main gear to shear the bolts holding the same, thus releasing the support of the elevator and allowing same to drop about 6 feet. The issue was thus clearly drawn as to what caused the shearing of the gears. All this mechanism was in a pit in the basement in which the elevator operated, and no one saw the breaking and shearing processes. Therefore it cannot be doubted but what such processes and the cause or causes thereof became a proper subject of expert testimony. There were but two hypotheses to be assumed as true, viz.: First, the shearing of the cap screws and the breaking of the cogs in the larger wheel, as shown by the undisputed evidence; and, second, the manner of handling the boxes by an employee of appellee express company; there being no contradiction as to appellee Trevey's statement that the elevator fell to the bottom without stopping. With reference to these hypotheses, the expert Hutchinson and George Harrison properly gave their opinion as to the cause of and processes leading up to the shearing of the cap screws. In this manner the entire situation and the credibility of the witnesses and the weight of the testimony were for the jury. The jury had the right to accept and reject such thereof as they saw proper. Of and as to such hypotheses, the

jurors would not be presumed to have such knowledge and experience as to make expert testimony inadmissible. The situation called for the testimony of those who, by previous study, skill, and knowledge of the science and mechanism involved, were able to aid the jury in arriving at a proper solution of said issues. Therefore appellant's third and fourth propositions, relating to the admission of the expert testimony of the witnesses Hutchinson and George Harrison, are overruled.

[9] Appellant contends that the court should have given its peremptory instruction (a) because there was no legal evidence in the record showing or tending to show what caused the elevator to fall, the only evidence in reference thereto being the opinion of an expert, which was based upon his observation of the construction of the elevator in July, 1924, after it had fallen in January, 1924, and had been reinstalled, and based upon what said expert had learned from the testimony of other witnesses as to the condition after the fall and being an opinion on the very issue to be determined by the jury, and (b) because the verdict of the jury and the judgment of the court could only be based upon the opinion of an expert witness illegally admitted; that, therefore, there was not in the record any evidence to substantiate the judgment, and further contends that the court erred in refusing its requested instruction to exclude the opinion testimony of the witness Hutchinson on the ground that same was illegally and improperly in the record. These contentions cannot be sustained, and, in the light of the discussion of the preceding propositions, are overruled.

[10] Appellant, by its third, fourth, fifth, sixth, seventh, and sixteenth propositions, presents directly, and in some respects only indirectly, the objection to the opinion testimony of the expert witness Hutchinson that he thereby testified to "the very issue being determined by the jury," viz.: What caused the elevator to fall and the cause of the accident to appellee Trevey. The bill of exceptions furnishing the basis for appellant's contention in this instance discloses that this witness did not testify anything about proper inspection or proper repairs. He, in all his completed testimony, including both that which was objected to and that which was not objected to, testified that certain conditions brought about the shearing of the cap screws, which shearing, it is undisputed, directly caused the fall. We cannot accede to the proposition that the mechanical causes of the fall of the elevator were "the very issues being determined by the jury" within the meaning of the rules of evidence that inhibit the giving of conclusions by witnesses. In our opinion, they are evidentiary of the ultimate issue of negligence, but are not such ultimate issue. T. & P. Ry. Co. v. Prunty, 111 Tex. 162, 230 S. W. 396. We do not understand that, because the jury would necessarily consider and reach a conclusion as to what mechanical laws and processes were involved in the shearing of the cap screws which caused the fall of the elevator, that the opinion of the witness was inadmissible when same did not involve a conclusion upon the real issue for the determination of the jury, viz.: Whether the appellant was negligent in the respects charged in appellee Trevey's petition. I. & G. N. Ry. Co. v. Mills, supra; I. & G. N. Ry. Co. v. McCullough (Tex. Civ. App.) 118 S. W. 560; M., K. & T. Ry. Co. of Texas v. Steele, 50 Tex. Civ. App. 634, 110 S. W. 174; Decatur Cotton Seed Oil Co. v. Belew, supra. Said propositions are overruled.

[11-13] It is seriously urged by appellant that, because the charge of negligence was that the defendant failed to inspect, equip, and repair the elevator, and that this caused it to fall with appellee Trevey, and it having been shown by the uncontradicted evidence that appellant bought the elevator in question of a reputable maker and that same was of a standard make and form and was properly set up and put in operation and inspected by the American Elevator Company, it was error for the court to submit special issues Nos. 2, 3, and 4, supra, and to refuse special issue No. 2a, requested by appellant, viz.: "After the installation of said elevator by the American Elevator Company, did the Morten Investment Company exercise ordinary care in keeping said elevator in proper repair?" the real issue thereby becoming under said uncontradicted proof whether or not, after such time, the defendant used care to inspect or used care to repair said elevator. Appellee Trevey's action was not in any respect based upon any act of negligence alleged in connection with any defect in the make, or the character of the make, of the elevator, or any defect in the work of setting same up and putting it in operation, or failure to inspect same by the American Elevator Company after same had been set up and put in operation, but limited his right of recovery to allegations incorporated within his charge of negligence above copied. The special issue requested by appellant was in effect necessarily involved in special issues Nos. 3 and 4, submitted by the court and objected to by appellant. An analytical review of the effect that should be given to said issues Nos. 3 and 4 we think not necessary to demonstrate this statement. However, we will make this observation. If appellant had exercised ordinary care in keeping said elevator in proper repair, it would not have been negligent in not discovering, prior to appellee Trevey's injury, the defective condition, if any, of the elevator, or negligent with reference to repairing the defective condition, if any, of its elevator. However, the issue refused would not have submitted for the determination of the jury one of

the material issues presented by the pleadings and supported by the evidence as reflected by special issue No. 2 given by the court, upon which necessarily appellee Trevey's right to recover was made to depend, for, if the elevator was not out of repair immediately prior to the time appellee express company placed the boxes of meat on it, appellee Trevey must necessarily have failed in establishing his cause of action against appellant. Said issues Nos. 2, 3, and 4, were not prejudicial to the rights of appellant, in that same imposed the duty upon appellant to discover and repair a defective condition, even if such defective condition was in the construction thereof, but only the duty to use ordinary care (a) to discover the defective condition, if any, of its elevator, and (b) the repairing of the defective condition, if any, of its elevator. Special charge No. 2 requested, viz.: "After the installation of the elevator by the American Elevator Company, did the Morten Investment Company exercise ordinary care in inspecting said elevator?" as well as requested charge No. 2a, were both properly refused. There is nothing in special issues Nos. 2, 3, and 4, given by the court, which either expressly or impliedly involves the issue of the construction of the elevator. No evidence of any character was introduced that there was any defective construction of the elevator, but, on the contrary, the evidence was that there had been a proper construction. It was also undisputed that the cap screws were liable to work loose by the vibration of the machinery after construction, and that the elevator had been installed about two years prior to the time of appellee Trevey's injuries. Further, that by slight effort the cap screws could have been easily inspected and kept tightened. Therefore there was no demand for the submission of the issues Nos. 2 and 2a, requested by appellant, in that there was no occasion for the jury to inquire in a general way as to whether the appellant had exercised ordinary care in inspecting said elevator from the time of its installation until the time of the fall, or whether it had upon other occasions since installation exercised ordinary care in keeping said elevator in proper repair. The issues for the jury to determine were precisely as submitted by the court, viz.: (a) Was the elevator out of repair immediately prior to the time of the accident? (b) Was appellant negligent in not discovering prior to appellee Trevey's injury such defective condition, if any? (c) Was appellant negligent with reference to the matter of repairing this defective condition, if any? The common-law rule in reference to purchase from a reputable manufacturer or dealer is practically the same in reference to all classes of cases, except passenger and carrier. Our Supreme Court, through the Commission of Appeals, in the case of St. L. S. W. Ry. Co. v. Ewing, 222

S. W. 199, stated and applied the rule as follows in a master and servant case:

"Applying what we conceive to be the correct rule of law to the facts of this particular case, we conclude that the purchase of a standard make car from a reputable manufacturer did not establish, as a matter of law, the exercise of ordinary care by defendant, relieving it of the duty of inspection. There being evidence that the derailment of the car, and consequent injury to plaintiff was the result of an improper adjustment of the cogwheels, discoverable by a reasonable inspection, the court properly refused the peremptory instruction and the special charge, requested by defendant."

To the same effect is the rule in reference to purchases from a reputable manufacturer or dealer, as stated in Thompson's Commentaries on the Law of Negligence (2d Ed.) vol. 1, § 1079. Also see the case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 520. This proposition is also overruled.

[14] It is urged that the court erred in permitting the witness G. Pounds to testify that he had unloaded similar boxes and packages on the elevator before, weighing as much as the boxes unloaded at the time of the accident, and that no injury resulted, in that it was undertaking to prove a lack of negligence by custom or other acts, all of which is irrelevant and improper. The testimony of the witness objected to is elsewhere stated in this opinion. We do not think there is any merit in this proposition. The purpose of this testimony was stated by counsel for appellee Trevey in the following language, viz.:

"Mr. Seay in this case is contending that the reason the elevator broke is because we threw some weights down here and broke it, and it is entirely practical and proper to show that in previous months this witness had unloaded on this elevator boxes of this kind and of this weight and in this manner and no elevator broke on those occasions."

In telling how he had unloaded boxes of like character on other occasions on the elevator, there was no expression in the testimony of the witness that he was careful, or any other expression that could constitute a mixed statement of law and fact. In volume 17, Cyc. 288, 289, the rule is stated as follows:

"In other words, persistent recurrence of a given result, when one antecedent alone remains constant, is highly probative that this antecedent is the cause of the result."

Also:

"It is also competent to prove occurrences on other occasions which show another cause for the result than that claimed to have been the cause. It is further possible logically to contend that, where a new element is added, other conditions remaining constant, a variation in result is due to the operation of the new element."

We think the distinction which controls this case is recognized in De Walt v. Houston E. & W. T. Ry. Co., 22 Tex. Civ. App. 408, 55 S. W. 537, in the following language:

"We think the court also properly permitted the witness to state whether the train was made up and handled on that occasion in the usual and customary way. There can be no valid objection to the answer. It was, however, error to permit the witness and others to state that the train was being handled in a 'careful and cautious manner' or 'carefully and cautiously.' Oliver v. Mahoney, 61 Tex. 610; City of Litchfield v. Anglim, 83 Ill. App. 55."

[15] Appellant seeks to invoke the rule that carefulness or negligence upon some other occasion cannot be shown to prove carefulness or negligence on the occasion under consideration. This rule has no relation to proof which is offered with the view of showing the law of cause and effect under like conditions, such as the instant case. City of Marlin v. Criswell (Tex. Civ. App.) 293 S. W. 912; T. P. & L. Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702, par. 4; Feagins v. Texas Machinery & Supply Co. (Tex. Civ. App.) 185 S. W. 961, par. 1. This proposition (No. 9) is therefore overruled.

By proper assignments and propositions, appellant complains that there was no evidence in the record as to how long after the accident it was before the witness J. R. Harrison saw the condition, or that the condition found by him was the same as it was immediately after the accident. The witness fixed the date very certain, definite and specific as on January 26th, 1924. Appellee Trevey testified that he was injured on that date. There is no evidence of any kind or character tending to show that the witness Harrison did not see the elevator the same day and immediately after its fall, nor any evidence of any character tending to show that there was any change in the condition between the time of the fall of the elevator and the time that the witness Harrison saw the result thereof. This proposition is overruled.

[16] The proposition is presented that the court erred in permitting appellee Trevey to testify that the boxes on the day of the accident were handled in the usual manner because negligence or lack of negligence could not be established by proof of a custom in face of overt acts at the time of the accident. Neither the question, nor the answer of the witness involved any statement as to care or negligence, and the only objection to the testimony was that appellee Trevey could not prove a custom. What we have said in disposing of proposition No. 9 applies with equal force to this one (No. 11), and same is therefore overruled.

[17] Appellant, by its thirteenth proposition, urges that it was error for the court to charge the jury (the case being submitted on special issues) "* * * that it was the duty of the defendant to exercise a degree of care which a person of ordinary prudence would exercise under the same or similar circumstances to discover and repair any defective condition, if any there was, in the elevator, and a failure upon its part to do so would be negligence," on the ground that said charge was not responsive to the pleadings or proof, was in its very nature a general charge telling the jury that appellant's failure to do certain acts would be negligent, and in a sense upon the weight of the evidence. In no other part of the court's charge was negligence defined or other guide furnished the jury to aid them in their deliberations upon the questions to be determined by them involving the issue of negligence—that is, as to what under the facts before them, if proven, would constitute negligence on the part of the appellant as charged by appellee Trevey as a basis for the maintenance of his cause of action. That the charge is subject to criticism, on account of the context of the provision of the charge in which the definition of negligence was incorporated, may be conceded, this by force of the fact that the cause was submitted on special issues. However, we think that the effect of the charge objected to was only to define what acts on the part of appellant of omission or commission would constitute actionable negligence. It was necessary for the jury to be instructed as to the duty appellant owed to appellee Trevey, for, without some statement that it was the duty of appellant to exercise ordinary care in the matter of discharging the duty that rested upon it under the case as alleged by appellee Trevey, the jury would probably have not been able to properly determine whether or not appellant failed to exercise ordinary care. Definitions of this kind are necessary and essential to a proper understanding of the term "negligence," and, without such a charge, the jury, as in the instant case, could have concluded that the appellant owed no such duty, and that therefore it had exercised ordinary care in the matter under investigation and in dispute between appellant and appellee Trevey. We think the following cases necessarily determine this proposition adversely to appellant: Fox v. Dallas Hotel Co., supra; Fort Worth & Denver City Ry. Co. v. Lovett (Tex. Civ. App.) 263 S. W. 644; Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046. Said proposition is therefore overruled.

[18] By its fifteenth proposition, appellant urges that, as it contended that the fall of the elevator which caused the accident resulted from the negligence of the appellee express company in dropping boxes on the elevator, and that as by special issue No. 1 the court had submitted to the jury that issue, it was improper and upon the weight of

the evidence for the court, in submitting the measure of damages to the jury, to use the following language: "* * * Resulting directly and proximately from the negligence, if any, of the defendant Morten Investment Company upon the occasion in question"— because it was an assumption by the court that the injuries were the result of the negligence of appellant and not of appellee express company. Following is the charge complained of:

"What sum, if paid now, will reasonably compensate plaintiff for his diminished capacity, if any, to labor and earn money in the past, if there has been any in the past, and in the future, if you find there will be any in the future, and his physical and mental suffering in the past, if there has been any in the past, and in the future, if you find there will be any in the future, resulting directly and proximately from the negligence, if any you have found, of the defendant Morten Investment Company, upon the occasion in question?"

There is no assumption of any fact in the charge objected to, but, to the contrary, every fact in issue, necessary to be determined in order to dispose of the rights of the parties, was left to the jury to decide from the evidence adduced before them. It was essential that the jury should find, not only that the elevator fell and that appellee Trevey was injured thereby, but whether or not such injuries resulted directly and proximately from the negligence, if any, of the appellant, and there is no intimation to be gathered from the language of this charge that, in the opinion of the court, appellee's injuries were the result of appellant's negligence, or that appellant was negligent in any respect. Under the charge as submitted, the jury was required to find whether or not there was negligence and whether or not such negligence, if any found, was the proximate cause of appellee Trevey's injuries, and further what damages, if any, were sustained by appellee on account of such injuries, before a verdict for any sum could have been properly rendered for appellee Trevey. Appellant contends that the court should merely have submitted, in place of that part of the charge objected to, "what sum of money would properly compensate the plaintiff for his injuries." If this language had been employed instead of that objected to, there would have been a valid ground for complaint, in that the court would have assumed that appellant was liable for such injuries and that such assumption influenced the jury in its findings of negligence against appellant and in its answer to special issue No. 1. However, as framed, every issue therein mentioned was left for the jury to determine without an express or implied assumption of any fact. Said proposition is therefore overruled.

[19, 20] It is next contended by appellant's seventeenth proposition that the uncontradict-ed evidence showed that appellee Trevey at most was a mere licensee, and, there being no evidence showing that appellant permitted said appellee to encounter a hidden peril known to appellant or that appellant willfully caused said appellee harm, the judgment is contrary to the evidence and should be set aside. This proposition is not tenable, because the undisputed facts show that appellee Trevey was an invited person, in that he went to appellant's hotel to complete the delivery of a shipment of meat and to ascertain upon such delivery what shortage there was therein, this because the consignee, appellant, had made complaint of former shortages, and because there appeared to be a shortage in the shipment then being delivered. Therefore appellee Trevey was not in the attitude of going upon appellant's premises for his own convenience or pleasure or matters which concerned him alone, but entered thereon by invitation of the owner, if not express, certainly by implication, in the performance of work mutual to the interest of appellee express company, whose agent appellee Trevey was, and appellant, the owner of the premises; therefore appellant as such owner owed appellee Trevey the duty of keeping such premises in a reasonably safe condition for his use while performing the work which made it necessary for him to go upon appellant's premises. Foster Lumber Co. v. Rodgers (Tex. Civ. App.) 184 S. W. 761; Moreman Gin Co. v. Brown (Tex. Civ. App.) 291 S. W. 946; 3 Shearman & Redfield on Negligence (6th Ed.) § 706. The rule announced in the authority last stated is as follows:

· "Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest of for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person is present in the performance of duty, official or otherwise. Invitation will also be implied from such long acquiescence as reasonably to give rise to the inference that it is invited, but it is not ordinarily to be inferred from mere passive acquiescence in what would otherwise be a trespass."

Appellee Trevey, however, does not have to rely upon any such custom to sustain his counter proposition that he was an invitee. This proposition is accordingly overruled.

[21] By its eighteenth proposition appellant presents as a cause for reversal that, as the jury found two acts of negligence, to wit, that the elevator was out of repair and that the appellant was negligent in not discovering it, and there being no finding by either the court or the jury that such acts of negligence were the proximate cause of appellee Trevey's injuries, the findings of the jury and judgment should have been set aside or a judgment should have been entered for appellant. Appellant in its brief at page 86 says:

"Certainly the whole fight in the case was whether or not the negligence of the American Railway Express Company in dropping the boxes caused the elevator to fall, or whether it was lack of repair or inspection by the Morten Investment Company."

The real controversy between appellant and appellee Trevey was whether the elevator was caused to fall by the way the boxes were handled by appellee express company's employee while putting same on the elevator, or whether it was caused to fall by the cap screws becoming loose and partially unscrewed. There was no question, as stated by counsel for appellant, but what the whole controversy in the case, so far as liability is concerned, was involved in this issue. When this was determined, the only remaining question involved as to liability was whether appellant was negligent in permitting or not repairing or not discovering this defective condition. In other words, the fall of the elevator was what injured appellee Trevey; the elevator was caused to fall by one of the two things as above mentioned. The jury, in finding that the act of the appellee express company was not the sole proximate cause, inevitably thereby found that the loosening of the cap screws was a proximate cause, and, when it found that the appellant was negligent in failing to discover and repair this condition, it inevitably found that such negligence was a proximate cause of appellee Trevey's injuries. There was therefore no further question of proximate cause to be submitted to the jury. G. C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; Ft. W. & N. O. Ry. Co. v. Enos (Tex. Civ. App.) 50 S. W. 595; Ft. W. & D. C. Ry. Co. v. Hawley (Tex. Civ. App.) 235 S. W. 660; City of Graham v. Moseley (Tex. Civ. App.) 254 S. W. 132. However, the effect of this proposition is destroyed by article 2190 R. S. 1925, reading in part as follows, viz.:

"Upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment, if there is evidence to sustain such finding."

It is contended by appellee that to narrate the issue of damages as found by the jury is to include in the narrative that the damages resulted directly and proximately from the negligence of appellant as found by the jury. However, conceding that the above contention cannot be sustained, and therefore in no respect was the issue "proximate cause of the injury" submitted, as no request for the submission of same was made, we are to deem that such issue was found by the court in such manner as to support the judgment; there being evidence sufficient to sustain such findings, the omitted issue being correlative, in accord with, and supplemental to, and in support of, the other issues submitted. We do not think that it can be doubted but that the omitted issue, viz. whether the acts of negligence found by the jury were the proximate cause of the injury, are reciprocally related to, connected and interdependent with, and mutually implied from the findings of negligence as made by the jury to the issues submitted. For the findings of the jury that appellant was guilty of negligence in the respects as alleged by appellee Trevey, and that said appellee was injured thereby and was entitled to compensation for such injuries, would undoubtedly imply the existence of the ultimate fact, viz.: That such acts of negligence were the proximate cause of the injuries so sustained. Ormsby et al. v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084. Said proposition is therefore overruled.

[22] It is next urged by appellant's nineteenth proposition that, as appellee express company's demurrer to the evidence admitted all facts of which there was any evidence and all conclusions which could fairly and logically be drawn from such facts, that the findings of the jury to special issue No. 1, being in direct conflict with such admissions so made under said demurrer, judgment should have been rendered against the appellee express company instead of it being dismissed from the case, and that the judgment as rendered is contrary to and unsupported by the facts, in so far as appellee express company is concerned. The demurrer to the evidence admitted that the boxes were only placed on the elevator, as testified to by the witness Pounds; that he was the agent of appellee express company; that appellee Trevey was injured at that time by the falling of appellant's elevator, but not that the fall of the elevator was caused by the dropping of the boxes, as alleged by appellant and established by the testimony of said Pounds, the only issue between appellant and appellee express company being that the fall of the elevator was caused by the dropping of certain boxes of meat weighing about 300 pounds on the elevator by said appellee's agent, Pounds, whereby said elevator was broken and caused to fall. Appellee Trevey did not base his cause of action upon the acts of negligence thus charged by appellant against appellee express company, and he could not have recovered thereon; same constituting only a matter of defense in behalf of appellant against the cause of action as alleged by appellee Trevey. This defense was submitted to the jury under an appropriate issue and resolved against appellant's contention. We have discussed this question elsewhere in this opinion, and it is not necessary to review this proposition further, and same presenting no error is overruled.

[23] By its twentieth proposition appellant urges that the verdict of the jury is unsupported by the evidence and is manifestly the

result of prejudice, passion, and sympathy, and is excessive and unwarranted by the law or the evidence, and therefore the case should be reversed or a remittitur required. The verdict of the jury was for $12,500. This proposition is manifestly inefficient to require consideration of all of the reasons therein assigned why the judgment should be reversed or a remittitur required, and we can only consider whether or not it is excessive and unwarranted by the law or the evidence, as the record is barren of anything that would indicate prejudice, passion, or sympathy, and appellant did not undertake in any manner to point out in what respect the verdict was the result of prejudice, passion, or sympathy. Is the verdict excessive and unwarranted by the law or the evidence? Appellee testified that he was making $110.40 per month at the time he was injured; had drawn as high as $182.50 per month; that since the accident the wage for the work he was then performing had been raised to $115.00 per month; that " * * * my job originally had been superintendent of stables, and, when they put on motors, that threw me out; they wanted to send me to other places, but at that time I got married and bought some property in Dallas and couldn't afford to leave, so they made a special man out of me and gave me $110 a month; since the accident I have not been able to earn any money on any job." It thus appears that the only effect upon the change from horse to motor power was to take him from a $182.50 a month job and put him on a $110.40 a month job, the pay of which had been increased to $115 after the accident. He further testified:

"I am not equipped to do office work. I don't write legible enough to do office work, and my education is not sufficient to do office or clerical work."

The evidence further shows that he tried to resume his former position, but was unable, on account of his injuries, to perform the services necessary for him to do, and he had not been able to perform any manual labor since the date he was injured, that it hurt him to walk or to sit still any length of time, and that cloudy and damp weather made a difference in his feeling.

Dr. J. M. Jones, a practicing physician, stated that he examined appellee Trevey on March 18, 1926, and testified as to his injuries as follows:

"I found that Mr. Trevey had a flat foot on the right side; the right foot, the heel is thickened and heavy and the arch of the foot is broken so to stick it forward from the place where is ought to be about an inch. When he stands, the highest place was about an inch forward from where it should be in a normal foot. When he gets his weight off of this foot it apparently assumes somewhere near the normal position. * * * What he has got now he

will suffer with for the rest of his life." Also: "I would say that would be a condition likely to be produced by a fall of that kind; that would be the probable result and the probable injury."

Dr. J. L. Pierce, an X-ray specialist, testified as follows:

"I had occasion to make a picture of the skeleton of the foot of Mr. Trevey, and have that with me. I found on the right side he has had an old fracture of the right heel bone. This is more or less a crushing fracture, and has produced certain changes. The right heel bone has reduced its normal height and is spread out."

Appellee was injured January 26, 1924. It thus appears that from the day of the injury to the day of the trial, about three years, that appellee had not earned anything and had been unable to work. There were no indications of any change for the better. The earnings thus already lost at the time of the trial amounted to about $4,000. Said appellee was about 55 years old at the time he was injured. Six additional years would make the earnings thus lost amount to $12,000; appellee's life expectancy being more than sufficient to cover this additional period. An allowance for physical suffering equal to the additional $500, plus the discount in arriving at the present worth of the money, the verdict for $12,500 we do not think is in any sense unreasonable, and the discussion of other propositions clearly indicates that same is not unwarranted by the law or the evidence. Houston E. & W. T. Ry. Co. v. Jackman (Tex. Civ. App.) 217 S. W. 417. We are therefore constrained to overrule this proposition.

The propositions not specifically discussed have been carefully considered, and, no reversible error being found therein, each are overruled. We are of the opinion that the judgment of the court below should be in all things affirmed, and it is so ordered.

Affirmed.